**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ACTIVE WIRELESS TECHNOLOGIES LLC, | § § § | Case No. |
| | § | **JURY TRIAL DEMANDED** |
| Plaintiff, | § § | |
| v. | § § | |
| TCL TECHNOLOGY GROUP CORP., TCL ELECTRONICS HOLDINGS LIMITED, TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, TCL COMMUNICATION LIMITED, TCT MOBILE INTERNATIONAL LIMITED, HUIZHOU TCL MOBILE COMMUNICATION COMPANY LIMITED, and TCL MOBILE COMMUNICATION (HK) COMPANY LIMITED | § § § § § § § § § § § § § | |
| Defendants. | § § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Active Wireless Technologies LLC ("AWT" or "Plaintiff") files this original Complaint against Defendants TCL Technology Group Corp. ("TCL Technology"), TCL Electronics Holdings Limited ("TCL Electronics"), TCL Communication Technology Holdings Limited ("TCL Communication"), TCL Communication Limited ("TCLC"), TCT Mobile International Limited ("TCT"), Huizhou TCL Mobile Communication Company Limited ("Huizhou TCL Mobile"), and TCL Mobile Communication (HK) Company Limited ("TCL Mobile (HK)") (collectively "TCL" or "Defendants"), for patent infringement under 35 U.S.C. § 271 and alleges as follows:

**THE PARTIES**

1.      AWT is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 140, Marshall, Texas 75670.

2.      Upon information and belief, Defendant TCL Technology is a corporation organized and existing under the laws of China, with its principal place of business located at TCL Keji Daxia, No.17, Huifeng 3rd Road, Zhongkai High-Tech Zone Huizhou, Guangdong, 516000 China. Defendant TCL Technology is a leading manufacturer and seller of smartphones and tablets in the world and in the United States. Upon information and belief, Defendant TCL Technology owns the trademark "TCL" which is marked on the Accused Products.[1] Upon information and belief, Defendant TCL Technology does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

3.      Upon information and belief, Defendant TCL Electronics Holdings Limited is a corporation organized and existing under the laws of the Cayman Islands, with its principal place of business located at 7th Floor, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong, and may be served pursuant to the provisions of the Hague Convention. Upon information and belief, TCL Electronics is an indirect wholly-owned subsidiary of TCL Technology. TCL Electronics is involved in the manufacture and sale of TVs, smartphones, smart connective devices and services, smart commercial display and smart home products and provision of Internet platform operating services.[2] Upon information and belief, TCL

---

[1] *See* https://www.tcl.com/usca/content/dam/tcl/product/mobile/tcl-10-5g-uw/downloads/VZW%20TCL-T790S%20UM_20201020_FINAL.pdf
[2] TCL Electronics Holdings Limited Annual Report 2020, at 141, https://doc.irasia.com/listco/hk/tclelectronics/annual/2020/ar2020.pdf

Electronics does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

4.    Upon information and belief, Defendant TCL Communication Technology Holdings Limited is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business located at TCL Communication Technology Building, Block F4, TCL International E City, Zhong Shan Yuan Road, Nanshan District, Shenzhen, Guangdong, 518052, China, and may be served pursuant to the provisions of the Hague Convention. Upon information and belief, TCL Communication is a wholly-owned subsidiary of TCL Electronics,[3] which is an indirectly wholly-owned subsidiary of TCL Technology. Together with its subsidiaries, TCL Communication manufactures and sells smartphones. Upon information and belief, TCL Communication does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

5.    Upon information and belief, Defendant TCL Communication Limited is a corporation organized and existing under the laws of the People's Republic of China, having an address of 7/F, Block F4, TCL International E. City Zhong Shan Yuan Road, Nanshan District, Shenzhen, China, and may be served pursuant to the provisions of the Hague Convention. TCL is involved in the manufacture and sale of smartphones. Upon information and belief, TCL does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

6.    Upon information and belief, Defendant TCT Mobile International Limited is a corporation organized and existing under the laws of the Hong Kong Special Administrative Region of the People's Republic of China, with a principal place of business located at 5/F,

---

[3] *Id.* at 145.

Building 22E, Hong Kong Science Park, 22 Science Park East Avenue, Sha Tin, Hong Kong, China, and may be served pursuant to the provisions of the Hague Convention. TCT is a leading manufacturer and seller of smartphones and tablets in the world and in the United States. Upon information and belief, TCL Communication is a wholly-owned subsidiary of TCL Electronics.[4] Upon information and belief, TCT does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

7.      Upon information and belief, Defendant Huizhou TCL Mobile Communication Company Limited is a corporation organized and existing under the laws of the People's Republic of China, with a principal place of business located at No. 3, Donghe South Road, Dongxin Area, Dongjiang Hi-tech Industrial Park, Zhongkai Hi-tech Zone, Huizhou City, Guangdong, China and may be served pursuant to the provisions of the Hague Convention. Upon information and belief, Huizhou TCL Mobile is a wholly-owned subsidiary of TCL Electronics and is involved in the manufacture and sale of smartphones. Upon information and belief, Huizhou TCL Mobile does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

8.      Upon information and belief, Defendant TCL Mobile Communication (HK) Company Limited is a corporation organized and existing under the laws of the Hong Kong Special Administrative Region of the People's Republic of China with a principal place of business located at 5/F, Building 22E, Hong Kong Science Park, 22 Science Park East Avenue, Sha Tin, Hong Kong, China, and may be served pursuant to the provisions of the Hague Convention. Upon information and belief, TCL Mobile (HK) is an indirect wholly-owned subsidiary of TCL Electronics[5] involved in the manufacture and sale of smartphones. Upon information and belief,

---

[4] *Id.*
[5] *Id.*

TCL Mobile (HK) does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

9.      Upon information and belief, the Defendants are part of an interrelated group of companies the work in consort with one another, which together comprise one of the world's largest manufacturers of televisions and smartphones and one of the leading sellers of televisions and smartphones in the United States, including the TCL and Alcatel brands. TCL, which refers to the company and its subsidiaries as the "Group," describes itself as one of the "world's leading consumer electronics company" and states that the Group is "mainly involved in the manufacture and sale of television ('TV') sets, smart mobile, smart connective devices and services, smart commercial display and smart home products and provision of Internet platform operating services."[6]

10.     Defendants named above and their affiliates operate as a unitary business venture and are both jointly and severally liable for the acts of patent infringement alleged herein

## JURISDICTION

11.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

12.     This Court has personal jurisdiction over Defendants. Defendants regularly conduct business and have committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States. Defendants,

---

[6] *Id.* at 5, 141.

directly and/or through subsidiaries or intermediaries, have committed and continue to commit sell, and/or selling products that infringe the Patents-in-Suit. Courts in Texas, including within this Judicial District, have concluded that Defendants, including TCL Technology, are subject to personal jurisdiction in the State of Texas and within this Judicial District. *See, e.g.*, *Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-cv-00546-JRG, 2020 WL 1478356, at *3 (E.D. Tex. Mar. 25, 2020) ("The Court therefore concludes that exercising personal jurisdiction over [TCL Technology] is reasonable and fair. Since the Court has also concluded that [TCL Technology] purposefully directed the Accused Products to this forum, and the alleged infringement arises out of and/or relates thereto, the Court finds that it may exercise personal jurisdiction over [TCL Technology] under specific jurisdiction."); *Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, No. 2:18-cv-00194-JRG, 2019 WL 2774362, at *1 (E.D. Tex. July 2, 2019) (denying TCT Mobile International Limited's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)).

13.    Defendants, including TCL Technology, induce their subsidiaries, affiliates, retail partners, and customers to make, use, sell, offer for sale, and/or important throughout the United States, including within this Judicial District, infringing products and placing such products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas. Paragraphs 2 through 10 are incorporated by reference as if fully set forth herein. Defendants, including TCL Technology, purposefully direct the infringing products identified herein into established distribution channels within this District and the U.S. nationally. For example, Defendants sell and offer to sell the infringing products through its website, https://www.tcl.com/us/en, which may be accessed throughout the United States, the State of Texas, and this Judicial District. Additionally, Defendants have authorized sellers and sales to

consumers throughout this District, including at the following locations in this District: Best Buy, 422 West Loop 281, Suite 100, Longview, Texas 75605; Costco Wholesale, 3650 West University Drive, McKinney, Texas 75071; Office Depot, 422 West Loop 281, Suite 300, Longview, Texas 75605; Target, 3092 North Eastman Road, Suite 100, Longview, Texas 75605; Wal-Mart, 1701 East End Boulevard North, Marshall, Texas 75670; Verizon, 500 E Loop 281, Longview, TX 75670; AT&T, 1712 E Grand Ave, Marshall, TX 75670; T-Mobile, 1806 E. End Blvd., N. Ste 100, Marshall, TX 75670.

14.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

15.    Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## **PATENTS-IN-SUIT**

16.    On October 13, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,805,955 (the "'955 Patent") entitled "Terminal Apparatus, Base Station Apparatus, Communication Method, and Integrated Circuit." A true and correct copy of the '955 Patent is available at https://patentimages.storage.googleapis.com/96/78/52/ec6c99c4d700c6/US10805955.pdf.

17.    On December 1, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,855,432 (the "'432 Patent") entitled "User Equipments, Base

Stations and Methods." A true and correct copy of the '432 Patent is available at https://patentimages.storage.googleapis.com/93/f9/32/444920e3737ed2/US10855432.pdf.

18. On January 7, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,531,443 (the "'443 Patent") entitled "Physical Uplink Control Channel (PUCCH) Format Adaptation for 5th Generation (5G) New Radio (NR)." A true and correct copy of the '443 Patent is available at https://patentimages.storage.googleapis.com/8c/13/4e/12211eb8688328/US10531443.pdf.

19. On May 25, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,019,557 (the "'557 Patent") entitled "Apparatus and Method for Acquisition of Periodically Broadcasted System Information in Wireless Communication." A true and correct copy of the '557 Patent is available at https://patentimages.storage.googleapis.com/85/9b/91/ba523facf65c3b/US11019557.pdf.

20. On September 22, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,785,764 (the "'764 Patent") entitled "Information Change Transmission Method and Device for Single-Cell Multicast Service." A true and correct copy of the '764 Patent is available at https://patentimages.storage.googleapis.com/e7/de/43/6ad94dd395b354/US10785764.pdf.

21. On March 24, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,601,566 (the "'566 Patent") entitled "Multiple Slot Long Physical Uplink Control Channel (PUCCH) Design for 5th Generation (5G) New Radio (NR)." A true and correct copy of the '566 Patent is as available at https://patentimages.storage.googleapis.com/fc/69/3e/5f20a4aa30d171/US10601566.pdf.

22.    AWT is the sole and exclusive owner of all right, title, and interest in the '955 Patent, the '432 Patent, the '443 Patent, the '557 Patent, the '764 Patent, and the '566 Patent (collectively, the "Patents-in-Suit") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. AWT also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit.

## **FACTUAL ALLEGATIONS**

23.    The '955 Patent generally relates to Physical Uplink Shared Channel (PUSCH) transmission and determination of power for the PUSCH at least based on a number of Single Carrier (SC)-Frequency Division Multiple Access (FDMA) symbols. The technology described in the '955 Patent was developed by Tomoki Yoshimura, Wataru Ouchi, Shoichi Suzuki, Liqing Liu, and Kimihiko Imamura of Sharp Kabushiki Kaisha and FG Innovation Company Limited.

24.    The '432 Patent generally relates to signalings and procedures for communications between user equipment and base stations involving one or more downlink bandwidth parts. The technology described in the '432 Patent was developed by Tatsushi Aiba and Zhanping Yin of Sharp Kabushiki Kaisha and FG Innovation Company Limited.

25.    The '443 Patent generally relates to a physical uplink control channel (PUCCH) format adaptation based on the concept of code block groups. The technology described in the '443 Patent was developed by Zhanping Yin and Toshizo Nogami of Sharp Kabushiki Kaisha and FG Innovation Company Limited.

26.    The '557 Patent generally relates to methods, apparatus, and techniques for requesting, transmitting, updating, and using system information (SI) in wireless communications. The technology described in the '557 Patent was developed by Atsushi Ishii of Sharp Kabushiki

Kaisha and FG Innovation Company Limited.

27.    The '764 Patent generally relates to an information change transmission method and device for single-cell multicast service. The technology described in the '764 Patent was developed by Chongming Zhang, Renmao Liu, and Shohei Yamada of Sharp Kabushiki Kaisha and FG Innovation Company Limited.

28.    The '566 Patent generally relates to a multiple slot long physical uplink control channel (PUCCH) design. The technology described in the '566 Patent was developed by Zhanping Yin and Toshizo Nogami of Sharp Kabushiki Kaisha and FG Innovation Company Limited.

29.    Defendants have infringed and continue to infringe one or more of the Patents-in-Suit by making,[7] using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import products, including mobile devices that implement the technology claimed by the Patents-in-Suit. For example, the Accused Products[8] include, but are not limited to phones including TAB 10 NXTPAPER 5G, 60 XE NXTPAPER 5G, TCL 50 XE 5G, TCL 50 XL 5G, TCL 50 XL NXTPAPER 5G, TCL 50 XE NXTPAPER 5G, 10 5G UW, 20 Pro 5G, 20 A 5G, 30XL, 40 XL, Tab Pro 5G, Stylus 5G, 30 V 5G, 30 XE 5G, 40 X 5G, Tab 10 5G, 40 XE 5G, 30 5G, LinkZone 5G UW, 20 AX 5G. Upon information and belief, each of these Accused Products is 3GPP-compliant.

---

[7] https://www.prnewswire.com/news-releases/tcl-communication-records-strong-smartphone-and-tablet-growth-in-q3-2021-301431486.html (indicating that "For nearly 40 years TCL has operated its **manufacturing and R&D centers worldwide**, with products sold in more than 160 countries throughout North America, Latin America, Europe, the Middle East, Africa, and the Asia Pacific. TCL specializes in the research, development, and manufacturing of consumer electronics ranging from TVs, mobile phones, audio devices, and smart home products as part of the company's 'AI x IoT' strategy. ") (emphasis added).
[8] https://www.tcl.com/us/en/products/mobile

30.     For example, Defendants sell and offer to sell the Accused Products in the United Staes through online stores such as Amazon, Walmart, and https://www.tcl.com/us/en. Upon information and belief, Defendants sell and offer to sell the Accused Products directly to customers and end-users through their website, as well as through their stores on Amazon and Walmart.





_____

[10] https://www.amazon.com/TCL-Unlocked-Smartphone-Wireless-Cellphone/dp/B09728VTDK?th=1

[11] https://www.walmart.com/ip/Walmart-Family-Mobile-TCL-30-Z-32GB-Black-Prepaid-Smartphone-Locked-to-Walmart-Family-Mobile/972364678?athbdg=L1103&from=/search.

31.     For further example, Defendants sell and offer to sell the Accused Products directly to customers and end-users in this District at the Walmart Supercenter in Marshall, TX 75670 for in-store purchase.



12

32.     Upon information and belief, Defendants are jointly responsible for the sale of the Accused Products to customers in the United States, including through their store at www.tcl.com. For example, the TCL global privacy policy available on www.tcl.com and https://www.tcl.com/us/en/ (and which applies to all of its subdomains) is on behalf of "TCL and/or its affiliates and subsidiaries (collectively "TCL", "we", "us" or "our")."[13] For example, upon information and belief, Defendants further sell and offer to sell the Accused Products directly to retailers and carriers in the United States, such as Walmart, Best Buy, Target, Micro Center, Costco, T-Mobile, AT&T, Verizon, Cricket, Boost Mobile, and the like.[14]   For example, upon

---

[12] https://www.walmart.com/search?q=tcl+5G+phone&facet=fulfillment_method_in_store%3AIn-store

[13] https://www.tcl.com/us/en/terms-privacy.

[14] *See* https://www.prnewswire.com/news-releases/tcl-communication-records-strong-smartphone-and-tablet-growth-in-q3-2021-301431486.html ("We have invested more than 1 billion USD in R&D, including the creation of dedicated 5G labs. Through partnerships with more than 80 carriers in 160 countries, TCL is delivering on its mission to provide lightning fast, affordable yet powerful and reliable 5G for everyone to enjoy a smarter home and life.").

information and belief, Defendants further sell and offer to sell the Accused Products to their own subsidiaries and sister entities in the United States, such as to TCT Mobile and TCL North America.



15

33.     Upon information and belief, Defendants offer the Accused Products' user guides through partnership with its U.S. carriers. For example, Defendants offer the user guide of the TCL 10 5G UW through Verizon.[16] For U.S. customers who wish to avail themselves of the warranty on such a TCL 10 5G UW device, the user guide directs the customer to Defendants' USA and Canada websites, highlighting that "TCL Communication Technology Holdings Limited. reserves the right to alter material or technical specification without prior notice."[17] The manual also alerts U.S. customers that they should "Use only batteries, battery chargers, and accessories which are recommended by TCL Communication Ltd. and its affiliates and are compatible with your phone

---

[15] https://www.verizon.com/smartphones/tcl-30-v-5g
[16] https://ss7.vzw.com/is/content/VerizonWireless/tcl-10-5g-uw-en-userguide-10212020
[17] *Id.* at 107.

model. TCL Communication Ltd. and its affiliates disclaim any liability for damage caused by the use of other chargers or batteries."[18] The manual also indicates that data of U.S. customers is shared with TCL Communication Ltd.: "Note that any data shared with TCL Communication Ltd. is stored in accordance with applicable data protection legislation. For these purposes TCL Communication Ltd. implements and maintains appropriate technical and organizational measures to protect all personal data."[19]

34.     U.S. customers that they should "Use only batteries, battery chargers, and accessories which are recommended by TCL Communication Ltd. and its affiliates and are compatible with your phone model. TCL Communication Ltd. and its affiliates disclaim any liability for damage caused by the use of other chargers or batteries."[12] The manual also indicates that data of U.S. customers is shared with TCL Communication Ltd.: "Note that any data shared with TCL Communication Ltd., is stored in accordance with applicable data protection legislation. For these purposes TCL Communication Ltd. implements and maintains appropriate technical and organizational measures to protect all personal data." [13]

35.     For example, Defendants sell and offer to sell the Accused Products in the United States, and track sales and growth of the Accused Products on a quarterly basis. "NEWSPROVIDED BYTCL Communication Technology Holdings Ltd." stated that "In the North American market, TCL's tablet shipment surged 73% in the third quarter compared with the previous quarter, ranking first among the Top 5 vendors in terms of growth rate. TCL forecast sits

---

[18] *Id.* at 7.
[19] *Id.* at 18.

recently launched TAB Pro 5Ginthe United States will drive more sales and growth in the next quarter."[20]

36.     Defendants' joint responsibility for the aforementioned sales and offers to sell in the United States are further shown by TCL financial statements, which are published by TCL Electronics Holdings Limited on behalf of all TCL group entities, and which show their efforts to maximize their device sales, including of the accused devices, to the United States. For example, TCL has stated that it makes 72.6% of its global revenue for phone sales (which it refers to as "small-and-medium-sized display" business) in North America:





21



22

37.    For example, TCL's 2022 Annual Report describes the "principal activities"" of Defendants as including, among other things, sale and distribution of its products, or otherwise describes share capital which are, upon information and belief, based on funds from the sale and distribution of those products. Upon information and belief, Defendants further sell, and offer to

---

[21] https://doc.irasia.com/listco/hk/tclelectronics/cpresent/pre230825.pdf at 4-5.
[22] *Id.* at 14.

sell the Accused Products to customers in the United States through related intermediary entities, including those listed.[23] TCL's annual report also touts that "[t]he Group has strengthened its leading position in the display business, delivering outstanding performance . . . [t]he market share of TCL mobile phones ranked the third and fourth in Canada and the U.S., respectively."[24] TCL's Annual report expressly describes U.S. sales by reference to "shipment of **the Group's smartphones.**"

> ### 2.2  Small-and-Medium-Sized Display
>
> During 2022, the Group launched a variety of new small-and-medium-sized smart display products, such as smart eye-protection tablets and smartphones, and continued to deepen cooperation with leading network operators worldwide, maintaining a leading position in overall shipment in the European and American markets. In 2022, the Group's total shipment of small-and-medium-sized display products reached 16.43 million sets, with total revenue of HK$11,802 million. Benefitting from product upgrades, sales in North American region were strong, with revenue increasing by 20.2% year-on-year. According to the latest report by IDC in key global markets, in 2022, shipment of the Group's smartphones ranked the third in Canada, the fourth in the U.S., the fifth in Australia, and the sixth in Western Europe. In 2022, the Group ranked the fifth in the world in terms of smart Android tablet shipment, and ranked the second, fourth and fifth in the U.S., Latin America and Western Europe, respectively.[25]

38.    For example, upon information and belief, Defendants import the Accused Products into the United States, including for at least the aforementioned sales, by paying for and arranging the shipment of the Accused Products into the United States, and specifying their destination within the United States. For example, TCL's 2023 interim financial statement discusses sea freight costs in detail, and further details the impact of U.S. Federal Reserve fund rates on its US CPI/PPI growth:

---

[23] https://docirasia.com/listco/hk/tclelectronics/annual/2022/ar2022.pdf at 139-142.
[24] *Id.* at 13.
[25] https://doc.irasia.com/listco/hk/tclelectronics/annual/2022/ar2022.pdf at 22.



39.    For example, upon information and belief, Defendants use the Accused Products in the United States for demonstration, marketing, and to create tutorials and instructions, inducing those based on which end users and other buyers are induced to infringe. For example, TCL regularly attends the CES conference where it demonstrates and markets its products, including upon information and belief, the accused 5G smartphones.[27]

40.    Defendants have had actual notice of the Patents-in-Suit at least from AWT's letter dated April 11, 2025, sent by email and hard copy, apprising Defendants of TCL's infringement of the Patents-in-Suit. TCL never responded.

41.    AWT has, at all times, complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

### COUNT I
**(Infringement of the '955 Patent)**

42.    Paragraphs 1 through 41 are incorporated by reference as if fully set forth herein.

---

[26] https://doc.irasia.com/listco/hk/tclelectronics/cpresent/pre230825.pdf at 4.
[27] https://www.tcl.com/global/en/ces-2022; https://www.tcl.com/ab/en/ces2021/index.html

43. AWT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '955 Patent.

44. Defendants have and continue to directly infringe the '955 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '955 Patent. Such products include at least the Accused Products.

45. For example, Defendants have and continue to directly infringe at least claim 1 of the '955 Patent by making, using, offering to sell, selling, and/or importing into the United States products and services, including at least the Accused Products that implement 3GPP standards (*e.g.*, 3GPP TS 36.212, 3GPP TS 36.213, 3GPP TS 36.211), which include a terminal apparatus comprising: transmission circuitry configured to and/or programmed to transmit a transport block on a Physical Uplink Channel (PUSCH), and physical layer processing circuitry configured to and/or programmed to determine transmit power for the PUSCH at least based on a number of Single Carrier (SC)-Frequency Division Multiple Access (FDMA) symbols $N^{PUSCH\text{-}initial}_{symb}$ for an initial transmission of the PUSCH for the transport block, wherein: the number of the SC-FDMA symbols $N^{PUSCH\text{-}initial}_{symb}$ is given based on $N_{LBT}$ and a number of SC-FDMA symbols included in a uplink slot $N^{UL}_{symb}$, and the $N_{LBT}$ is 1 in a case that a signal of a SC-FDMA symbol with index 1 is generated based on a content for resource elements corresponding to a SC-FDMA symbol with index 1+1.

46. By way of example, each Accused Product comprises a terminal apparatus compliant with the 3GPP standards with transmission circuitry configured to and/or programmed to transmit a transport block on a Physical Uplink Channel (PUSCH).

## 4.1    Uplink

Table 4.1-1 specifies the mapping of the uplink transport channels to their corresponding physical channels. Table 4.1-2 specifies the mapping of the uplink control channel information to its corresponding physical channel.

**Table 4.1-1**

| TrCH | Physical Channel |
|---|---|
| UL-SCH | PUSCH |
| RACH | PRACH |

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 9.

- $N_{\text{symb}}^{\text{PUSCH-initial}}$ is the number of SC-FDMA symbols per subframe/slot/subslot for initial PUSCH transmission for the same transport block, respectively, given by

$$N_{\text{symb}}^{PUSCH\text{-}initial} = \left( \tilde{N}_{\text{symb}}^{\text{UL}} - N_{\text{SRS}} - N_{\text{start}}^{PUSCH\text{-}initial} - N_{\text{end}}^{PUSCH\text{-}initial} \right), \text{ where}$$

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 27.

## 5.2.2.6    Channel coding of control information

For the case when only one transport block is transmitted in the PUSCH conveying the HARQ-ACK bits, rank indicator bits or CRI bits:

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 26-27.

47.    By further way of example, each Accused Product comprises physical layer processing circuitry configured to and/or programmed to determine transmit power for the PUSCH at least based on a number of Single Carrier (SC)-Frequency Division Multiple Access (FDMA) symbols N$^{PUSCH-initial}_{symb}$ for an initial transmission of the PUSCH for the transport block.

## 5.1.1.1    UE behaviour

The setting of the UE Transmit power for a Physical Uplink Shared Channel (PUSCH) transmission is defined as follows.

If the UE transmits PUSCH without a simultaneous PUCCH for the serving cell $c$, then the UE transmit power $P_{\text{PUSCH},c}(i)$ for PUSCH transmission in subframe/slot/subslot $i$ for the serving cell $c$ is given by

$$P_{\text{PUSCH,c}}(i) = \min \left\{ \begin{array}{l} P_{\text{CMAX},c}(i), \\ 10\log_{10}(M_{\text{PUSCH,c}}(i)) + P_{\text{O\_PUSCH,c}}(j) + \alpha_c(j) \cdot PL_c + \Delta_{\text{TF,c}}(i) + f_c(i) \end{array} \right\} \text{ [dBm]}$$

https://www.etsi.org/deliver/etsi_ts/136200_136299/136213/15.03.00_60/ts_136213v150300p.pdf, Page 16.

- $\Delta_{TF,c}(i) = 10\log_{10}\left(\left(2^{BPRE \cdot K_s} - 1\right) \cdot \beta_{offset}^{PUSCH}\right)$ for $K_S = 1.25$ and 0 for $K_S = 0$ where $K_S$ is given by the parameter *deltaMCS-Enabled* provided by higher layers for each serving cell $c$. $BPRE$ and $\beta_{offset}^{PUSCH}$, for each serving cell $c$, are computed as below. $K_S = 0$ for transmission mode 2.

  - $BPRE = O_{CQI} / N_{RE}$ for control data sent via subframe-PUSCH without UL-SCH data or slot/sublot-PUSCH without UL-SCH data if the UE is configured with a higher layer parameter *uplinkPower-CSIPayload*, $BPRE = O'_{CQI} / N_{RE}$ and $O'_{CQI} = \max\{O_{CQI,RI}\}$ with $O_{CQI,RI}$ defined as the number of CQI/PMI bits including CRC for a given RI value for slot/subslot-PUSCH without UL-SCH data if the UE is not configured with a higher layer parameter *uplinkPower-CSIPayload*, and $BPRE = \sum_{r=0}^{C-1} K_r / N_{RE}$ for other cases.

    - where $C$ is the number of code blocks, $K_r$ is the size for code block $r$, $O_{CQI}$ is the number of CQI/PMI bits including CRC bits and $N_{RE}$ is the number of resource elements determined as $N_{RE} = M_{sc}^{PUSCH-initial} \cdot N_{symb}^{PUSCH-initial}$, where $C$, $K_r$, $M_{sc}^{PUSCH-initial}$ and $N_{symb}^{PUSCH-initial}$ are defined in [4].

https://www.etsi.org/deliver/etsi_ts/136200_136299/136213/15.03.00_60/ts_136213v150300p.pdf, Page 18.

## 5.2.2.6    Channel coding of control information

- $N_{symb}^{PUSCH-initial}$ is the number of SC-FDMA symbols per subframe/slot/subslot for initial PUSCH transmission for the same transport block, respectively, given by $N_{symb}^{PUSCH-initial} = \left(\tilde{N}_{symb}^{UL} - N_{SRS} - N_{start}^{PUSCH-initial} - N_{end}^{PUSCH-initial}\right)$, where

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 26-27

48.    By further way of example, each Accused Product comprises physical layer processing circuitry wherein the number of the SC-FDMA symbols $N_{symb}^{PUSCH-initial}$ is given based on $N_{LBT}$ and a number of SC-FDMA symbols included in a uplink slot $N_{symb}^{UL}$.

22

## 3.2     Symbols

For the purposes of the present document, the following symbols apply:

$N_{\text{symb}}^{\text{UL}}$          Number of SC-FDMA symbols in an uplink slot

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 7-8.

### 5.2.2.6     Channel coding of control information

- $N_{\text{symb}}^{\text{PUSCH-initial}}$ is the number of SC-FDMA symbols per subframe/slot/subslot for initial PUSCH transmission for the same transport block, respectively, given by

  $N_{\text{symb}}^{PUSCH\text{-}initial} = \left( \tilde{N}_{\text{symb}}^{\text{UL}} - N_{\text{SRS}} - N_{\text{start}}^{PUSCH\text{-}initial} - N_{\text{end}}^{PUSCH\text{-}initial} \right)$, where

  - $\tilde{N}_{\text{symb}}^{\text{UL}} = \left( N_{\text{symb}}^{\text{UL}} - 1 \right)$ for PUSCH with slot duration, or for Partial PUSCH Mode 2 or 3, or

  - $\tilde{N}_{\text{symb}}^{\text{UL}} = N_{\text{symb}}^{subslot} - N_{DMRS}$ for PUSCH with subslot duration,

    - $N_{\text{symb}}^{subslot}$ is the number of SC-FDMA symbols of the subslot as defined in clause 4.1 of [2],

    - $N_{DMRS}$ is the number of SC-FDMA symbols for DMRS of the subslot as defined in clause 5.5.2.1.2 of [2]

  - otherwise $\tilde{N}_{\text{symb}}^{\text{UL}} = 2 \left( N_{\text{symb}}^{\text{UL}} - 1 \right)$.

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 26-27.

- $N_{\text{start}}^{PUSCH\text{-}inital}$ is equal to 1 when the UE configured for uplink transmission on a LAA SCell is indicated to transmit the PUSCH not starting from the beginning of the first symbol or the seventh symbol of the subframe for initial transmission, otherwise is equal to 0.

- $N_{\text{end}}^{PUSCH\text{-}inital}$ is equal to 1 when the UE configured for uplink transmission on a LAA SCell is indicated to transmit the PUSCH up to the second to last symbol of the subframe for initial transmission and $N_{SRS}$ is equal to 0, otherwise is equal to 0.

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 28.

23

LAA eNB and UE apply Listen-Before-Talk (LBT) before performing a transmission on LAA SCell. When LBT is applied, the transmitter listens to/senses the channel to determine whether the channel is free or busy. If the channel is determined to be free, the transmitter may perform the transmission; otherwise, it does not perform the transmission. If an LAA eNB uses channel access signals of other technologies for the purpose of LAA channel access, it shall continue to meet the LAA maximum energy detection threshold requirement.

The combined time of transmissions compliant with the channel access procedure described in clause 15.1.2 of [6] by an eNB should not exceed 50 ms in any contiguous 1 second period on an LAA SCell.

https://www.etsi.org/deliver/etsi_ts/136300_136399/136300/15.03.00_60/ts_136300v150300p.pdf, Page 74.

49.    By further way of example, each Accused Product comprises physical layer processing circuitry wherein the $N_{LBT}$ is 1 in a case that a signal of a SC-FDMA symbol with index 1 is generated based on a content for resource elements corresponding to a SC-FDMA symbol with index 1+1. For example, the value of $N_{LBT}$ (e.g., $N^{PUSCH\text{-}initial}_{start}$) is 1 when a cell is configured with  Licensed Assisted Access (LAA) and performs  Listen-Before-Talk (LBT). This occurs, for example, when DCI (format 0A) indicates PUSCH starting position '01' or '10' ("not starting from the beginning of the first symbol…"):

## 5.2.2.6    Channel coding of control information

- $N^{PUSCH\text{-}initial}_{symb}$ is the number of SC-FDMA symbols per subframe/slot/subslot for initial PUSCH transmission for the same transport block, respectively, given by

$$N^{PUSCH\text{-}initial}_{symb} = \left( \tilde{N}^{UL}_{symb} - N_{SRS} - N^{PUSCH\text{-}initial}_{start} - N^{PUSCH\text{-}initial}_{end} \right), \text{ where}$$

- $\tilde{N}^{UL}_{symb} = \left( N^{UL}_{symb} - 1 \right)$ for PUSCH with slot duration, or for Partial PUSCH Mode 2 or 3, or

- $\tilde{N}^{UL}_{symb} = N^{subslot}_{symb} - N_{DMRS}$ for PUSCH with subslot duration,

  - $N^{subslot}_{symb}$ is the number of SC-FDMA symbols of the subslot as defined in subclause 4.1 of [2],

  - $N_{DMRS}$ is the number of SC-FDMA symbols for DMRS of the subslot as defined in subclause 5.5.2.1.2 of [2]

- otherwise $\tilde{N}^{UL}_{symb} = 2\left( N^{UL}_{symb} - 1 \right)$.

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 26-27.

- $N_{\text{start}}^{PUSCH\text{-}inital}$ is equal to 1 when the UE configured for uplink transmission on a LAA SCell is indicated to transmit the PUSCH not starting from the beginning of the first symbol or the seventh symbol of the subframe for initial transmission, otherwise is equal to 0.

- $N_{\text{end}}^{PUSCH\text{-}inital}$ is equal to 1 when the UE configured for uplink transmission on a LAA SCell is indicated to transmit the PUSCH up to the second to last symbol of the subframe for initial transmission and $N_{SRS}$ is equal to 0, otherwise is equal to 0.

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 28.

LAA eNB and UE apply Listen-Before-Talk (LBT) before performing a transmission on LAA SCell. When LBT is applied, the transmitter listens to/senses the channel to determine whether the channel is free or busy. If the channel is determined to be free, the transmitter may perform the transmission; otherwise, it does not perform the transmission. If an LAA eNB uses channel access signals of other technologies for the purpose of LAA channel access, it shall continue to meet the LAA maximum energy detection threshold requirement.

The combined time of transmissions compliant with the channel access procedure described in clause 15.1.2 of [6] by an eNB should not exceed 50 ms in any contiguous 1 second period on an LAA SCell.

https://www.etsi.org/deliver/etsi_ts/136300_136399/136300/15.03.00_60/ts_136300v150300p.pdf, Page 74.

### 5.3.3.1.1A    Format 0A

DCI format 0A is used for the scheduling of PUSCH in a LAA SCell, or activating/releasing AUL transmission as defined in [3], or indicating AUL downlink feedback information (AUL-DFI) to a UE that is activated with AUL transmission.

The following information is transmitted by means of the DCI format 0A:

- PUSCH starting position – 2 bits

  - as specified in Table 5.3.3.1.1A-2 if the 'Partial PUSCH Mode' field indicates Partial PUSCH Mode 2;

  - as specified in Table 5.3.3.1.1A-1 otherwise.

**Table 5.3.3.1.1A-1: PUSCH starting position**

| Value | PUSCH starting position |
|-------|-------------------------|
| 00 | symbol 0 |
| 01 | 25µs in symbol 0 |
| 10 | (25+TA) us in symbol 0 |
| 11 | symbol 1 |

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/15.03.00_60/ts_136212v150300p.pdf, Page 177-179.

50.    For further example, $N_{LBT}$ is 1 when a signal of a SC-FDMA symbol with index $l$ (e.g., "the time-continuous signal $s_l^{(p)}(t)$ for antenna port p in SC-FDMA symbol $l$ in an uplink slot") is generated based on a content for resource elements (e.g., "$a_{k,l}^{(p)}$ is the content of resource element (k,l) on antenna port p") corresponding to a SC-FDMA symbol with index l+1 (e.g., $s_l^{(p)}(t-N_{CP,0}T_s)$ where index is l+1 where l=0))

## 5.6    SC-FDMA baseband signal generation

This clause applies to all uplink physical signals and uplink physical channels except the physical random access channel and PUSCH using sub-PRB allocations for BL/CE UEs.

The time-continuous signal $s_l^{(p)}(t)$ for antenna port $p$ in SC-FDMA symbol $l$ in an uplink slot is defined by

$$s_l^{(p)}(t) = \sum_{k=-\left\lfloor N_{RB}^{UL}N_{sc}^{RB}/2\right\rfloor}^{\left\lceil N_{RB}^{UL}N_{sc}^{RB}/2\right\rceil-1} a_{k^{(-)},l}^{(p)} \cdot e^{j2\pi(k+1/2)\Delta f(t-N_{CP,l}T_s)}$$

for $0 \le t < (N_{CP,l}+N)\times T_s$ where $k^{(-)} = k + \left\lfloor N_{RB}^{UL}N_{sc}^{RB}/2\right\rfloor$, $N = 2048$, $\Delta f = 15\,\text{kHz}$ and $a_{k,l}^{(p)}$ is the content of resource element $(k,l)$ on antenna port $p$.

For frame structure type 3, if the associated DCI indicates PUSCH starting position other than '00' or if 'autonomous PUSCH' is configured, $s_0^{(p)}(t), l = 0$ is given by

$$s_0^{(p)}(t) = \begin{cases} 0 & 0 \le t < N_{start}^{FS3}T_s \\ -s_1^{(p)}(t-N_{CP,0}T_s) & N_{start}^{FS3}T_s \le t < (N_{CP,0}+N)T_s \end{cases}$$

where

$$N_{start}^{FS3} = \begin{cases} 768 & \text{if the associated DCI indicates PUSCH starting position '01'} \\ 768+N_{TA} & \text{if the associated DCI indicates PUSCH starting position '10'} \\ N_{CP,0}+N & \text{if the associated DCI indicates PUSCH starting position '11'} \end{cases}$$

and were $N_{start}^{FS3}$ is given by TS36.213 [4] if 'autonomous PUSCH' is configured.

https://www.etsi.org/deliver/etsi_ts/136200_136299/136211/15.03.00_60/ts_136211v150300p.pdf, Page 79.

51.    TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '955 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as TCL's partners, customers, clients, and end-users, in this District and elsewhere in the United

States. For example, TCL's partners, customers, clients, and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '955 Patent. TCL induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to partners, customers, clients, and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation related to the Accused Products. Because of TCL's inducement, TCL's partners, customers, clients, and end-users use the Accused Products in a way TCL intends and they directly infringe the '955 Patent. TCL performs these affirmative acts with knowledge of the '955 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '955 Patent.

52.    TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '955 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as partners, customers, clients, and end-users, in this District and elsewhere in the United States. TCL's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products such that the '955 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '955 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TCL to be especially made or adapted for use in the infringement of the '955 Patent. TCL performs these affirmative acts with knowledge of the '955 Patent and with intent, or willful blindness, that they cause the direct infringement of the '955 Patent.

27

53.     Defendants' infringement of the '955 Patent is and has been willful. Defendants have had actual notice of the Patents-in-Suit at least from AWT's letter dated April 11, 2025, sent by email and hard copy, apprising Defendants of TCL's infringement of the Patents-in-Suit. TCL never responded.

54.     AWT has suffered damages as a result of Defendants' direct and indirect infringement of the '955 Patent in an amount to be proved at trial.

## COUNT II
### (Infringement of the '432 Patent)

55.     Paragraphs 1 through 41 are incorporated by reference as if fully set forth herein.

56.     AWT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '432 Patent.

57.     Defendants have and continue to directly infringe the '432 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '432 Patent. Such products include at least the Accused Products.

58.     For example, Defendants have and continue to directly infringe at least claim 1 of the '432 Patent by making, using, offering to sell, selling, and/or importing into the United States products and services including at least the Accused Products that implement 3GPP standards (*e.g.*, 3GPP TS 38.213, 3GPP TS 38.214, 3GPP TS 38.331, 3GPP TS 38.321), which include a user equipment that communicates with a base station apparatus on one or more downlink bandwidth parts (DL BWPs) in at least one serving cell, comprising: receiving circuitry configured to receive an activation command for at least one of a semi-persistent channel state information-reference signal (CSI-RS) and a channel state information-interference measurement (CSI-IM) resource

configuration, the semi-persistent CSI-RS and CSI-IM resource configuration being associated with a DL BWP of the on one or more DL BWPs, the receiving circuitry configured to receive a deactivation command for the at least one of semi-persistent CSI-RS and CSI-IM resource configuration, and processing circuitry configured to consider that the at least one of the semi-persistent CSI-RS and CSI-IM resource configuration is suspended in a case that the associated DL BWP is deactivated.

59.    By way of example, each Accused Product is compliant with the 3GPP standards and comprises a user equipment on one or more downlink bandwidth parts (DL BWPs) in at least one serving cell.

## 12    Bandwidth part operation

If the UE is configured with a SCG, the UE shall apply the procedures described in this clause for both MCG and SCG

- When the procedures are applied for MCG, the terms 'secondary cell', 'secondary cells' , 'serving cell', 'serving cells' in this clause refer to secondary cell, secondary cells, serving cell, serving cells belonging to the MCG respectively.

- When the procedures are applied for SCG, the terms 'secondary cell', 'secondary cells', 'serving cell', 'serving cells' in this clause refer to secondary cell, secondary cells (not including PSCell), serving cell, serving cells belonging to the SCG respectively. The term 'primary cell' in this clause refers to the PSCell of the SCG.

A UE configured for operation in bandwidth parts (BWPs) of a serving cell, is configured by higher layers for the serving cell a set of at most four bandwidth parts (BWPs) for receptions by the UE (DL BWP set) in a DL bandwidth by parameter *BWP-Downlink* or by parameter *initialDownlinkBWP* with a set of parameters configured by *BWP-DownlinkCommon* and *BWP-DownlinkDedicated*, and a set of at most four BWPs for transmissions by the UE (UL BWP set) in an UL bandwidth by parameter *BWP-Uplink* or by parameter *initialUplinkBWP* with a set of parameters configured by *BWP-UplinkCommon* and *BWP-UplinkDedicated*.

https://www.etsi.org/deliver/etsi_ts/138200_138299/138213/15.14.00_60/ts_138213v151400p.pdf, at 96-97.

60.    By further way of example, each Accused Product comprises receiving circuitry configured to receive an activation command for at least one of a semi-persistent channel state information-reference signal (CSI-RS) and a channel state information-interference measurement (CSI-IM) resource configuration, the semi-persistent CSI-RS and CSI-IM resource configuration being associated with a DL BWP of the on one or more DL BWPs.

## 5.2    UE procedure for reporting channel state information (CSI)

### 5.2.1.5.2    Semi-persistent CSI/Semi-persistent CSI-RS

For semi-persistent reporting on PUSCH, a set of trigger states are higher layer configured by *CSI-SemiPersistentOnPUSCH-TriggerStateList,* where the CSI request field in DCI scrambled with SP-CSI-RNTI activates one of the trigger states. A UE is not expected to receive a DCI scrambled with SP-CSI-RNTI activating one semi-persistent CSI report with the same CSI-ReportConfigId as in a semi-persistent CSI report which is activated by a previously received DCI scrambled with SP-CSI-RNTI.

For semi-persistent reporting on PUCCH, the PUCCH resource used for transmitting the CSI report are configured by *reportConfigType.* Semi-persistent reporting on PUCCH is activated by an activation command as described in clause 6.1.3.16 of [10, TS 38.321], which selects one of the semi-persistent Reporting Settings for use by the UE on the PUCCH. When the UE would transmit a PUCCH with HARQ-ACK information in slot $n$ corresponding to the PDSCH carrying the activation command, the indicated semi-persistent Reporting Setting should be applied starting from the first slot that is after slot $n + 3N_{slot}^{subframe,\mu}$ where $\mu$ is the SCS configuration for the PUCCH.

For a UE configured with CSI resource setting(s) where the higher layer parameter *resourceType* set to 'semiPersistent'.

- when a UE receives an activation command, as described in clause 6.1.3.12 of [10, TS 38.321], for CSI-RS resource set(s) for channel measurement and CSI-IM/NZP CSI-RS resource set(s) for interference measurement associated with configured CSI resource setting(s), and when the UE would transmit a PUCCH with HARQ-ACK information in slot $n$ corresponding to the PDSCH carrying the selection command, the corresponding actions in [10, TS 38.321] and the UE assumptions (including QCL assumptions provided by a list of reference to *TCI-State's,* one per activated resource) on CSI-RS/CSI-IM transmission corresponding to the configured CSI-RS/CSI-IM resource configuration(s) shall be applied starting from the first slot that is after slot $n + 3N_{slot}^{subframe,\mu}$ where $\mu$ is the SCS configuration for the PUCCH. If a *TCI-State* referred to in the list is configured with a reference to an RS associated with 'QCL-TypeD', that RS can be an SS/PBCH block, periodic or semi-persistent CSI-RS located in same or different CC/DL BWP.

- when a UE receives a deactivation command, as described in clause 6.1.3.12 of [10, TS 38.321], for activated CSI-RS/CSI-IM resource set(s) associated with configured CSI resource setting(s), and when the UE would transmit a PUCCH with HARQ-ACK information in slot $n$ corresponding to the PDSCH carrying the deactivation command, the corresponding actions in [10, TS 38.321] and UE assumption on cessation of CSI-RS/CSI-IM transmission corresponding to the deactivated CSI-RS/CSI-IM resource set(s) shall apply starting from the first slot that is after slot $n + 3N_{slot}^{subframe,\mu}$ where $\mu$ is the SCS configuration for the PUCCH.

https://www.etsi.org/deliver/etsi_ts/138200_138299/138214/15.13.00_60/ts_138214v151300p.pdf, at 36, 44.

### 5.18.2    Activation/Deactivation of Semi-persistent CSI-RS/CSI-IM resource set

The network may activate and deactivate the configured Semi-persistent CSI-RS/CSI-IM resource sets of a Serving Cell by sending the SP CSI-RS/CSI-IM Resource Set Activation/Deactivation MAC CE described in clause 6.1.3.12. The configured Semi-persistent CSI-RS/CSI-IM resource sets are initially deactivated upon configuration and after a handover.

https://www.etsi.org/deliver/etsi_ts/138300_138399/138321/15.12.00_60/ts_138321v151200p.pdf, at 50.

### 6.1.3.12    SP CSI-RS/CSI-IM Resource Set Activation/Deactivation MAC CE

The SP CSI-RS/CSI-IM Resource Set Activation/Deactivation MAC CE is identified by a MAC subheader with LCID as specified in Table 6.2.1-1. It has a variable size and consists of the following fields:

- A/D: This field indicates whether to activate or deactivate indicated SP CSI-RS and CSI-IM resource set(s). The field is set to 1 to indicate activation, otherwise it indicates deactivation;

- Serving Cell ID: This field indicates the identity of the Serving Cell for which the MAC CE applies. The length of the field is 5 bits;

- BWP ID: This field indicates a DL BWP for which the MAC CE applies as the codepoint of the DCI *bandwidth part indicator* field as specified in TS 38.212 [9]. The length of the BWP ID field is 2 bits;

- SP CSI-RS resource set ID: This field contains an index of *NZP-CSI-RS-ResourceSet* containing Semi Persistent NZP CSI-RS resources, as specified in TS 38.331 [5], indicating the Semi Persistent NZP CSI-RS resource set, which shall be activated or deactivated. The length of the field is 6 bits;

- IM: This field indicates the presence of the octet containing SP CSI-IM resource set ID field. If the IM field is set to 1, the octet containing SP CSI-IM resource set ID field is present. If IM field is set to 0, the octet containing SP CSI-IM resource set ID field is not present;

- SP CSI-IM resource set ID: This field contains an index of *CSI-IM-ResourceSet* containing Semi Persistent CSI-IM resources, as specified in TS 38.331 [5], indicating the Semi Persistent CSI-IM resource set, which shall be activated or deactivated. The length of the field is 6 bits;

*Id.* at 63.

## 5.2    UE procedure for reporting channel state information (CSI)

### 5.2.1.2    Resource settings

Each CSI Resource Setting *CSI-ResourceConfig* contains a configuration of a list of S≥1 CSI Resource Sets (given by higher layer parameter *csi-RS-ResourceSetList*), where the list is comprised of references to either or both of NZP CSI-RS resource set(s) and SS/PBCH block set(s) or the list is comprised of references to CSI-IM resource set(s). Each CSI Resource Setting is located in the DL BWP identified by the higher layer parameter *BWP-id*, and all CSI Resource Settings linked to a CSI Report Setting have the same DL BWP.

https://www.etsi.org/deliver/etsi_ts/138200_138299/138214/15.13.00_60/ts_138214v151300p.pdf, at 36.

## 6.3.2    Radio resource control information elements

–    *CSI-ResourceConfig*

The IE *CSI-ResourceConfig* defines a group of one or more *NZP-CSI-RS-ResourceSet*, *CSI-IM-ResourceSet* and/or *CSI-SSB-ResourceSet*.

**CSI-ResourceConfig information element**

```
-- ASN1START
-- TAG-CSI-RESOURCECONFIG-START

CSI-ResourceConfig ::=            SEQUENCE {
    csi-ResourceConfigId          CSI-ResourceConfigId,
    csi-RS-ResourceSetList        CHOICE {
        nzp-CSI-RS-SSB                   SEQUENCE {
            nzp-CSI-RS-ResourceSetList  SEQUENCE (SIZE (1..maxNrofNZP-CSI-RS-ResourceSetsPerConfig)) OF NZP-CSI-RS-ResourceSetId
                                                                                    OPTIONAL, -- Need R
            csi-SSB-ResourceSetList     SEQUENCE (SIZE (1..maxNrofCSI-SSB-ResourceSetsPerConfig)) OF CSI-SSB-ResourceSetId
                                                                                    OPTIONAL, -- Need R
        },
        csi-IM-ResourceSetList        SEQUENCE (SIZE (1..maxNrofIM-ResourceSetsPerConfig)) OF CSI-IM-ResourceSetId
    },

    bwp-Id                        BWP-Id,
    resourceType                  ENUMERATED { aperiodic, semiPersistent, periodic },
    ...
}

-- TAG-CSI-RESOURCECONFIG-STOP
-- ASN1STOP
```

https://www.etsi.org/deliver/etsi_ts/138300_138399/138331/15.14.00_60/ts_138331v151400p.pdf, at 190, 229.

–    *NZP-CSI-RS-ResourceSet*

The IE *NZP-CSI-RS-ResourceSet* is a set of Non-Zero-Power (NZP) CSI-RS resources (their IDs) and set-specific parameters.

**NZP-CSI-RS-ResourceSet information element**

```
-- ASN1START
-- TAG-NZP-CSI-RS-RESOURCESET-START
NZP-CSI-RS-ResourceSet ::=      SEQUENCE {
    nzp-CSI-RS-ResourceSetId        NZP-CSI-RS-ResourceSetId,
    nzp-CSI-RS-Resources            SEQUENCE (SIZE (1..maxNrofNZP-CSI-RS-ResourcesPerSet)) OF NZP-CSI-RS-ResourceId,
    repetition                      ENUMERATED { on, off }               OPTIONAL, -- Need S
    aperiodicTriggeringOffset       INTEGER(0..6)                        OPTIONAL, -- Need S
    trs-Info                        ENUMERATED {true}                    OPTIONAL, -- Need R
    ...
}

-- TAG-NZP-CSI-RS-RESOURCESET-STOP
-- ASN1STOP
```

| NZP-CSI-RS-ResourceSet field descriptions |
|---|
| **aperiodicTriggeringOffset** |
| Offset X between the slot containing the DCI that triggers a set of aperiodic NZP CSI-RS resources and the slot in which the CSI-RS resource set is transmitted. The value 0 corresponds to 0 slots, value 1 corresponds to 1 slot, value 2 corresponds to 2 slots, value 3 corresponds to 3 slots, value 4 corresponds to 4 slots, value 5 corresponds to 16 slots, value 6 corresponds to 24 slots. When the field is absent the UE applies the value 0. |
| **nzp-CSI-RS-Resources** |
| NZP-CSI-RS-Resources associated with this NZP-CSI-RS resource set (see TS 38.214 [19], clause 5.2). For CSI, there are at most 8 NZP CSI RS resources per resource set. |
| **repetition** |
| Indicates whether repetition is on/off. If the field is set to *off* or if the field is absent, the UE may not assume that the NZP-CSI-RS resources within the resource set are transmitted with the same downlink spatial domain transmission filter (see TS 38.214 [19], clauses 5.2.2.3.1 and 5.1.6.1.2). It can only be configured for CSI-RS resource sets which are associated with *CSI-ReportConfig* with report of L1 RSRP or "no report". |
| **trs-Info** |
| Indicates that the antenna port for all NZP-CSI-RS resources in the CSI-RS resource set is same. If the field is absent or released the UE applies the value *false* (see TS 38.214 [19], clause 5.2.2.3.1). |

*Id.* at 274-275.

–        *CSI-IM-ResourceSet*

The IE *CSI-IM-ResourceSet* is used to configure a set of one or more CSI Interference Management (IM) resources (their IDs) and set-specific parameters.

**CSI-IM-ResourceSet information element**

```
-- ASN1START
-- TAG-CSI-IM-RESOURCESET-START

CSI-IM-ResourceSet ::=          SEQUENCE {
    csi-IM-ResourceSetId            CSI-IM-ResourceSetId,
    csi-IM-Resources                SEQUENCE (SIZE(1..maxNrofCSI-IM-ResourcesPerSet)) OF CSI-IM-ResourceId,
    ...
}
-- TAG-CSI-IM-RESOURCESET-STOP
-- ASN1STOP
```

| **CSI-IM-ResourceSet field descriptions** |
|---|
| **csi-IM-Resources** |
| *CSI-IM-Resources* associated with this *CSI-IM-ResourceSet* (see TS 38.214 [19], clause 5.2). |

*Id.* at 221-222.

61.    By further way of example, each Accused Product comprises receiving circuitry configured to receive a deactivation command for the at least one of semi-persistent CSI-RS and CSI-IM resource configuration.

## 5.2        UE procedure for reporting channel state information (CSI)

### 5.2.1.5.2        Semi-persistent CSI/Semi-persistent CSI-RS

For semi-persistent reporting on PUSCH, a set of trigger states are higher layer configured by *CSI-SemiPersistentOnPUSCH-TriggerStateList,* where the CSI request field in DCI scrambled with SP-CSI-RNTI activates one of the trigger states. A UE is not expected to receive a DCI scrambled with SP-CSI-RNTI activating one semi-persistent CSI report with the same CSI-ReportConfigId as in a semi-persistent CSI report which is activated by a previously received DCI scrambled with SP-CSI-RNTI.

For semi-persistent reporting on PUCCH, the PUCCH resource used for transmitting the CSI report are configured by *reportConfigType*. Semi-persistent reporting on PUCCH is activated by an activation command as described in clause 6.1.3.16 of [10, TS 38.321], which selects one of the semi-persistent Reporting Settings for use by the UE on the PUCCH. When the UE would transmit a PUCCH with HARQ-ACK information in slot $n$ corresponding to the PDSCH carrying the activation command, the indicated semi-persistent Reporting Setting should be applied starting from the first slot that is after slot $n + 3N_{slot}^{subframe,\mu}$ where $\mu$ is the SCS configuration for the PUCCH.

For a UE configured with CSI resource setting(s) where the higher layer parameter *resourceType* set to 'semiPersistent'.

- when a UE receives an activation command, as described in clause 6.1.3.12 of [10, TS 38.321], for CSI-RS resource set(s) for channel measurement and CSI-IM/NZP CSI-RS resource set(s) for interference measurement associated with configured CSI resource setting(s), and when the UE would transmit a PUCCH with HARQ-ACK information in slot $n$ corresponding to the PDSCH carrying the selection command, the corresponding actions in [10, TS 38.321] and the UE assumptions (including QCL assumptions provided by a list of reference to *TCI-State's*, one per activated resource) on CSI-RS/CSI-IM transmission corresponding to the configured CSI-RS/CSI-IM resource configuration(s) shall be applied starting from the first slot that is after slot $n + 3N_{slot}^{subframe,\mu}$ where $\mu$ is the SCS configuration for the PUCCH. If a *TCI-State* referred to in the list is configured with a reference to an RS associated with 'QCL-TypeD', that RS can be an SS/PBCH block, periodic or semi-persistent CSI-RS located in same or different CC/DL BWP.

- when a UE receives a deactivation command, as described in clause 6.1.3.12 of [10, TS 38.321], for activated CSI-RS/CSI-IM resource set(s) associated with configured CSI resource setting(s), and when the UE would transmit a PUCCH with HARQ-ACK information in slot $n$ corresponding to the PDSCH carrying the deactivation command, the corresponding actions in [10, TS 38.321] and UE assumption on cessation of CSI-RS/CSI-IM transmission corresponding to the deactivated CSI-RS/CSI-IM resource set(s) shall apply starting from the first slot that is after slot $n + 3N_{slot}^{subframe,\mu}$ where $\mu$ is the SCS configuration for the PUCCH.

https://www.etsi.org/deliver/etsi_ts/138200_138299/138214/15.13.00_60/ts_138214v151300p.pdf, at 36, 44.

### 5.18.2    Activation/Deactivation of Semi-persistent CSI-RS/CSI-IM resource set

The network may activate and deactivate the configured Semi-persistent CSI-RS/CSI-IM resource sets of a Serving Cell by sending the SP CSI-RS/CSI-IM Resource Set Activation/Deactivation MAC CE described in clause 6.1.3.12. The configured Semi-persistent CSI-RS/CSI-IM resource sets are initially deactivated upon configuration and after a handover.

https://www.etsi.org/deliver/etsi_ts/138300_138399/138321/15.12.00_60/ts_138321v151200p.pdf, at 50.

6.1.3.12       SP CSI-RS/CSI-IM Resource Set Activation/Deactivation MAC CE

The SP CSI-RS/CSI-IM Resource Set Activation/Deactivation MAC CE is identified by a MAC subheader with LCID as specified in Table 6.2.1-1. It has a variable size and consists of the following fields:

-    A/D: This field indicates whether to activate or deactivate indicated SP CSI-RS and CSI-IM resource set(s). The field is set to 1 to indicate activation, otherwise it indicates deactivation;

-    Serving Cell ID: This field indicates the identity of the Serving Cell for which the MAC CE applies. The length of the field is 5 bits;

-    BWP ID: This field indicates a DL BWP for which the MAC CE applies as the codepoint of the DCI *bandwidth part indicator* field as specified in TS 38.212 [9]. The length of the BWP ID field is 2 bits;

-    SP CSI-RS resource set ID: This field contains an index of *NZP-CSI-RS-ResourceSet* containing Semi Persistent NZP CSI-RS resources, as specified in TS 38.331 [5], indicating the Semi Persistent NZP CSI-RS resource set, which shall be activated or deactivated. The length of the field is 6 bits;

-    IM: This field indicates the presence of the octet containing SP CSI-IM resource set ID field. If the IM field is set to 1, the octet containing SP CSI-IM resource set ID field is present. If IM field is set to 0, the octet containing SP CSI-IM resource set ID field is not present;

-    SP CSI-IM resource set ID: This field contains an index of *CSI-IM-ResourceSet* containing Semi Persistent CSI-IM resources, as specified in TS 38.331 [5], indicating the Semi Persistent CSI-IM resource set, which shall be activated or deactivated. The length of the field is 6 bits;

*Id.* at 63.

62.    By further way of example, each Accused Product comprises processing circuitry configured to consider that the at least one of the semi-persistent CSI-RS and CSI-IM resource configuration is suspended in a case that the associated DL BWP is deactivated.

5.2.1.5.2       Semi-persistent CSI/Semi-persistent CSI-RS

If the UE has an active semi-persistent CSI-RS/CSI-IM resource configuration, or an active semi-persistent ZP CSI-RS resource set configuration, and has not received a deactivation command, the activated semi-persistent CSI-RS/CSI-IM resource set or the activated semi-persistent ZP CSI-RS resource set configurations are considered to be active when the corresponding DL BWP is active, otherwise they are considered suspended.

https://www.etsi.org/deliver/etsi_ts/138200_138299/138214/15.13.00_60/ts_138214v151300p.pdf, at 36, 44-45.

63.    TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '432 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as TCL's partners, customers, clients, and end-users, in this District and elsewhere in the United States. For example, TCL's partners, customers, clients, and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the

'432 Patent. TCL induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to partners, customers, clients, and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation related to the Accused Products. Because of TCL's inducement, TCL's partners, customers, clients, and end-users use the Accused Products in a way TCL intends and they directly infringe the '432 Patent. TCL performs these affirmative acts with knowledge of the '432 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '432 Patent.

64.     TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '432 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as partners, customers, clients, and end-users, in this District and elsewhere in the United States. TCL's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products such that the '432 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '432 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TCL to be especially made or adapted for use in the infringement of the '432 Patent. TCL performs these affirmative acts with knowledge of the '432 Patent and with intent, or willful blindness, that they cause the direct infringement of the '432 Patent.

65.     Defendants' infringement of the '432 Patent is and has been willful. Defendants have had actual notice of the Patents-in-Suit at least from AWT's letter dated April 11, 2025, sent

by email and hard copy, apprising Defendants of TCL's infringement of the Patents-in-Suit. TCL never responded.

66.      AWT has suffered damages as a result of Defendants' direct and indirect infringement of the '432 Patent in an amount to be proved at trial.

**COUNT III**
**(Infringement of the '443 Patent)**

67.      Paragraphs 1 through 41 are incorporated by reference as if fully set forth herein.

68.      AWT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '443 Patent.

69.      Defendants have and continue to directly infringe the '443 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '443 Patent. Such products include at least the Accused Products.

70.      For example, Defendants have and continue to directly infringe at least claim 1 of the '443 Patent by making, using, offering to sell, selling, and/or importing into the United States products and services including at least the Accused Products that implement 3GPP standards (*e.g.*, 3GPP TS 38.213), which include a user equipment (UE), comprising: receiving circuitry configured to receive a physical downlink shared channel (PDSCH) that includes code block groups (CBGs) of a transport block; and transmitting circuitry configured to transmit CBG based HARQ-ACK, wherein for the CBG based HARQ-ACK corresponding to the PDSCH which is scheduled in a common search space (CSS), the transmitting circuitry is configured to report one HARQ-ACK bit for the transport block, for the CBG based HARQ-ACK corresponding to the

PDSCH which is scheduled in a UE-specific search space (USS), the transmitting circuitry is configured to report HARQ-ACK bits of all CBGs.

71.    By way of example, each Accused Product is compliant with the 3GPP standards and comprises receiving circuitry configured to receive a physical downlink shared channel (PDSCH) that includes code block groups (CBGs) of a transport block and transmitting circuitry configured to transmit CBG based HARQ-ACK.

### 9.1.1   CBG-based HARQ-ACK codebook determination

If a UE is provided *PDSCH-CodeBlockGroupTransmission* for a serving cell, the UE receives a PDSCH scheduled by DCI format 1_1, that includes code block groups (CBGs) of a transport block. The UE is also provided *maxCodeBlockGroupsPerTransportBlock* indicating a maximum number $N_{HARQ-ACK}^{CBG/TB,max}$ of CBGs for generating respective HARQ-ACK information bits for a transport block reception for the serving cell.

For a number of $C$ code blocks (CBs) in a transport block, the UE determines a number of CBGs $M$ according to Clause 5.1.7.1 of [6, TS 38.214] and determines a number of HARQ-ACK bits for the transport block as $N_{HARQ-ACK}^{CBG/TB} = M$.

The UE generates an ACK for the HARQ-ACK information bit of a CBG if the UE correctly received all code blocks of the CBG and generates a NACK for the HARQ-ACK information bit of a CBG if the UE incorrectly received at least one code block of the CBG. If the UE receives two transport blocks, the UE concatenates the HARQ-ACK information bits for CBGs of the second transport block after the HARQ-ACK information bits for CBGs of the first transport block.

The HARQ-ACK codebook includes the $N_{HARQ-ACK}^{CBG/TB,max}$ HARQ-ACK information bits and, if $N_{HARQ-ACK}^{CBG/TB} < N_{HARQ-ACK}^{CBG/TB,max}$ for a transport block, the UE generates a NACK value for the last $N_{HARQ-ACK}^{CBG/TB,max} - N_{HARQ-ACK}^{CBG/TB}$ HARQ-ACK information bits for the transport block in the HARQ-ACK codebook.

If the UE generates a HARQ-ACK codebook in response to a retransmission of a transport block, corresponding to a same HARQ process as a previous transmission of the transport block, the UE generates an ACK for each CBG that the UE correctly decoded in a previous transmission of the transport block.

If a UE correctly detects each of the $N_{HARQ-ACK}^{CBG/TB}$ CBGs and does not correctly detect the transport block for the $N_{HARQ-ACK}^{CBG/TB}$ CBGs, the UE generates a NACK value for each of the $N_{HARQ-ACK}^{CBG/TB}$ CBGs.

https://www.etsi.org/deliver/etsi_ts/138200_138299/138213/15.14.00_60/ts_138213v151400p.pdf, at 40-41.

72.    By further way of example, each Accused Product comprises transmitting circuitry configured to transmit one HARQ-ACK bit for the transport block for the CBG based HARQ-ACK corresponding to the PDSCH which is scheduled in a common search space (CSS).

## 9.1    HARQ-ACK codebook determination

If a UE receives a PDSCH without receiving a corresponding PDCCH, or if the UE receives a PDCCH indicating a SPS PDSCH release, the UE generates one corresponding HARQ-ACK information bit.

If a UE is not provided *PDSCH-CodeBlockGroupTransmission*, the UE generates one HARQ-ACK information bit per transport block.

For a HARQ-ACK information bit, a UE generates an ACK if the UE detects a DCI format 1_0 that provides a SPS PDSCH release or correctly decodes a transport block, and generates a NACK if the UE does not correctly decode the transport block.

A UE does not expect to be indicated to transmit HARQ-ACK information for more than one SPS PDSCH receptions in a same PUCCH.

In the following, the CRC for DCI format 1_0 or DCI format 1_1 is scrambled with a C-RNTI, an MCS-C-RNTI, or a CS-RNTI.

*Id.* at 40.

The UE generates an ACK for the HARQ-ACK information bit of a CBG if the UE correctly received all code blocks of the CBG and generates a NACK for the HARQ-ACK information bit of a CBG if the UE incorrectly received at least one code block of the CBG. If the UE receives two transport blocks, the UE concatenates the HARQ-ACK information bits for CBGs of the second transport block after the HARQ-ACK information bits for CBGs of the first transport block.

The HARQ-ACK codebook includes the $N_{HARQ-ACK}^{CBG/TB,max}$ HARQ-ACK information bits and, if $N_{HARQ-ACK}^{CBG/TB} < N_{HARQ-ACK}^{CBG/TB, max}$ for a transport block, the UE generates a NACK value for the last $N_{HARQ-ACK}^{CBG/TB,max} - N_{HARQ-ACK}^{CBG/TB}$ HARQ-ACK information bits for the transport block in the HARQ-ACK codebook.

If the UE generates a HARQ-ACK codebook in response to a retransmission of a transport block, corresponding to a same HARQ process as a previous transmission of the transport block, the UE generates an ACK for each CBG that the UE correctly decoded in a previous transmission of the transport block.

If a UE correctly detects each of the $N_{HARQ-ACK}^{CBG/TB}$ CBGs and does not correctly detect the transport block for the $N_{HARQ-ACK}^{CBG/TB}$ CBGs, the UE generates a NACK value for each of the $N_{HARQ-ACK}^{CBG/TB}$ CBGs.

*Id.* at 41.

If a UE receives a SPS PDSCH, or a SPS PDSCH release, or a PDSCH that is scheduled by a DCI format 1_0 and if

-    the UE is configured with one serving cell, and

-    $\mathscr{C}(M_{A,c}) = 1$, and

-    *PDSCH-CodeBlockGroupTransmission* is provided to the UE

the UE generates HARQ-ACK information only for the transport block in the PDSCH or only for the SPS PDSCH release.

*Id.* at 44.

For each DL BWP configured to a UE in a serving cell, the UE is provided by higher layers with $S \leq 10$ search space sets where, for each search space set from the $S$ search space sets, the UE is provided the following by *SearchSpace*:

- a search space set index $s$, $0 < s < 40$, by *searchSpaceId*

- an association between the search space set $s$ and a CORESET $p$ by *controlResourceSetId*

- a PDCCH monitoring periodicity of $k_s$ slots and a PDCCH monitoring offset of $o_s$ slots, by *monitoringSlotPeriodicityAndOffset*

- a PDCCH monitoring pattern within a slot, indicating first symbol(s) of the CORESET within a slot for PDCCH monitoring, by *monitoringSymbolsWithinSlot*

- a duration of $T_s < k_s$ slots indicating a number of slots that the search space set $s$ exists by *duration*

- a number of PDCCH candidates $M_s^{(L)}$ per CCE aggregation level $L$ by *aggregationLevel1*, *aggregationLevel2*, *aggregationLevel4*, *aggregationLevel8*, and *aggregationLevel16*, for CCE aggregation level 1, CCE aggregation level 2, CCE aggregation level 4, CCE aggregation level 8, and CCE aggregation level 16, respectively

- an indication that search space set $s$ is either a CSS set or a USS set by *searchSpaceType*

- if search space set $s$ is a CSS set

  - an indication by *dci-Format0-0-AndFormat1-0* to monitor PDCCH candidates for DCI format 0_0 and DCI format 1_0

  - an indication by *dci-Format2-0* to monitor one or two PDCCH candidates for DCI format 2_0 and a corresponding CCE aggregation level

  - an indication by *dci-Format2-1* to monitor PDCCH candidates for DCI format 2_1

  - an indication by *dci-Format2-2* to monitor PDCCH candidates for DCI format 2_2

  - an indication by *dci-Format2-3* to monitor PDCCH candidates for DCI format 2_3

- if search space set $s$ is a USS set, an indication by *dci-Formats* to monitor PDCCH candidates either for DCI format 0_0 and DCI format 1_0, or for DCI format 0_1 and DCI format 1_1

*Id.* at 78-79.

73.    By further way of example, each Accused Product comprises transmitting circuitry configured to transmit HARQ-ACK bits of all CBGs for the CBG based HARQ-ACK corresponding to the PDSCH which is scheduled in a UE-specific search space (USS).

## 9.1.1  CBG-based HARQ-ACK codebook determination

If a UE is provided *PDSCH-CodeBlockGroupTransmission* for a serving cell, the UE receives a PDSCH scheduled by DCI format 1_1, that includes code block groups (CBGs) of a transport block. The UE is also provided *maxCodeBlockGroupsPerTransportBlock* indicating a maximum number $N_{\mathrm{HARQ-ACK}}^{\mathrm{CBG/TB,max}}$ of CBGs for generating respective HARQ-ACK information bits for a transport block reception for the serving cell.

For a number of $C$ code blocks (CBs) in a transport block, the UE determines a number of CBGs $M$ according to Clause 5.1.7.1 of [6, TS 38.214] and determines a number of HARQ-ACK bits for the transport block as $N_{\mathrm{HARQ-ACK}}^{\mathrm{CBG/TB}} = M$ .

*Id.* at 40.

If $O_{\mathrm{ACK}} + O_{\mathrm{SR}} + O_{\mathrm{CSI}} \leq 11$ , the UE determines a number of HARQ-ACK information bits $n_{\mathrm{HARQ-ACK}}$ for obtaining a transmission power for a PUCCH, as described in Clause 7.2.1, as $n_{\mathrm{HARQ-ACK}} = \sum_{c=0}^{N_{\mathrm{cells}}^{\mathrm{DL}}-1} \sum_{m=0}^{M_c-1} N_{m,c}^{\mathrm{received}} + \sum_{c=0}^{N_{\mathrm{cells}}^{\mathrm{DL}}-1} \sum_{m=0}^{M_c-1} N_{m,c}^{\mathrm{receivedCBG}}$

where

- $N_{m,c}^{\mathrm{received}}$ is the number of transport blocks the UE receives in PDSCH reception occasion $m$ for serving cell $c$ if *harq-ACK-SpatialBundlingPUCCH* and *PDSCH-CodeBlockGroupTransmission* are not provided, or the number of transport blocks the UE receives in PDSCH reception occasion $m$ for serving cell $c$ if *PDSCH-CodeBlockGroupTransmission* is provided and the PDSCH reception is scheduled by a DCI format 1_0, or the number of PDSCH receptions if *harq-ACK-SpatialBundlingPUCCH* is provided or SPS PDSCH release in PDSCH reception occasion $m$ for serving cell $c$ and the UE reports corresponding HARQ-ACK information in the PUCCH.

- $N_{m,c}^{\mathrm{received,CBG}}$ is the number of CBGs the UE receives in a PDSCH reception occasion $m$ for serving cell $c$ if *PDSCH-CodeBlockGroupTransmission* is provided and the PDSCH reception is scheduled by a DCI format 1_1 and the UE reports corresponding HARQ-ACK information in the PUCCH.

*Id.* at 46.

For each DL BWP configured to a UE in a serving cell, the UE is provided by higher layers with $S \leq 10$ search space sets where, for each search space set from the $S$ search space sets, the UE is provided the following by *SearchSpace*:

- a search space set index $s$, $0 < s < 40$, by *searchSpaceId*

- an association between the search space set $s$ and a CORESET $p$ by *controlResourceSetId*

- a PDCCH monitoring periodicity of $k_s$ slots and a PDCCH monitoring offset of $o_s$ slots, by *monitoringSlotPeriodicityAndOffset*

- a PDCCH monitoring pattern within a slot, indicating first symbol(s) of the CORESET within a slot for PDCCH monitoring, by *monitoringSymbolsWithinSlot*

- a duration of $T_s < k_s$ slots indicating a number of slots that the search space set $s$ exists by *duration*

- a number of PDCCH candidates $M_s^{(L)}$ per CCE aggregation level $L$ by *aggregationLevel1*, *aggregationLevel2*, *aggregationLevel4*, *aggregationLevel8*, and *aggregationLevel16*, for CCE aggregation level 1, CCE aggregation level 2, CCE aggregation level 4, CCE aggregation level 8, and CCE aggregation level 16, respectively

- an indication that search space set $s$ is either a CSS set or a USS set by *searchSpaceType*

- if search space set $s$ is a CSS set

  - an indication by *dci-Format0-0-AndFormat1-0* to monitor PDCCH candidates for DCI format 0_0 and DCI format 1_0

  - an indication by *dci-Format2-0* to monitor one or two PDCCH candidates for DCI format 2_0 and a corresponding CCE aggregation level

  - an indication by *dci-Format2-1* to monitor PDCCH candidates for DCI format 2_1

  - an indication by *dci-Format2-2* to monitor PDCCH candidates for DCI format 2_2

  - an indication by *dci-Format2-3* to monitor PDCCH candidates for DCI format 2_3

- if search space set $s$ is a USS set, an indication by *dci-Formats* to monitor PDCCH candidates either for DCI format 0_0 and DCI format 1_0, or for DCI format 0_1 and DCI format 1_1

*Id.* at 78-79.

74.     TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '443 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as TCL's partners, customers, clients, and end-users, in this District and elsewhere in the United States. For example, TCL's partners, customers, clients, and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '443 Patent. TCL induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing

instructions, documentation, and other information to partners, customers, clients, and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation related to the Accused Products. Because of TCL's inducement, TCL's partners, customers, clients, and end-users use the Accused Products in a way TCL intends and they directly infringe the '443 Patent. TCL performs these affirmative acts with knowledge of the '443 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '443 Patent.

75.     TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '443 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as partners, customers, clients, and end-users, in this District and elsewhere in the United States. TCL's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products such that the '443 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '443 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TCL to be especially made or adapted for use in the infringement of the '443 Patent. TCL performs these affirmative acts with knowledge of the '443 Patent and with intent, or willful blindness, that they cause the direct infringement of the '443 Patent.

76.     Defendants' infringement of the '443 Patent is and has been willful. Defendants have had actual notice of the Patents-in-Suit at least from AWT's letter dated April 11, 2025, sent by email and hard copy, apprising Defendants of TCL's infringement of the Patents-in-Suit. TCL never responded.

77.     AWT has suffered damages as a result of Defendants' direct and indirect infringement of the '443 Patent in an amount to be proved at trial.

## COUNT IV
### (Infringement of the '557 Patent)

78.     Paragraphs 1 through 41 are incorporated by reference as if fully set forth herein.

79.     AWT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '557 Patent.

80.     Defendants have and continue to directly infringe the '557 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '557 Patent. Such products include at least the Accused Products.

81.     For example, Defendants have and continue to directly infringe at least claim 1 of the '557 Patent by making, using, offering to sell, selling, and/or importing into the United States products and services including at least the Accused Products that implement 3GPP standards (*e.g.*, 3GPP TS 38.331), which include a user equipment that communicates over a radio interface with a base station apparatus of a radio access network (RAN), the user equipment comprising: receiver circuitry configured to receive a first type system information block (SIB) from the base station apparatus that is a current serving access node of the user equipment, the first type SIB comprising: scheduling information of a system information (SI) message, the SI message comprising at least one second type SIB, the scheduling information configuring SI windows, the SI windows comprising periodically occurring time windows in which the SI message is transmitted; a parameter associated with a condition for determination of a failure of an SI message acquisition process; and an indication of broadcast status for the SI message, the indication

indicating broadcasting; and processor circuitry configured to: initiate, based on the indication, the SI message acquisition process in at least one of the SI windows to receive the SI message from the base station apparatus; and initiate a re-acquisition process to re-acquire the first type SIB from the base station apparatus upon the failure of the SI message acquisition process.

82.    By way of example, each Accused Product comprises a user equipment that communicates over a radio interface with a base station apparatus of a radio access network (RAN) which is compliant with the 3GPP standards. Each Accused Product comprises receiver circuitry configured to receive a first type system information block (SIB) from the base station apparatus that is a current serving access node of the user equipment, the first type SIB comprising: scheduling information of a system information (SI) message, the SI message comprising at least one second type SIB, the scheduling information configuring SI windows, the SI windows comprising periodically occurring time windows in which the SI message is transmitted.

## 5.2    System information

### 5.2.1    Introduction

System Information (SI) is divided into the *MIB* and a number of SIBs where:

- the *SIB1* is transmitted on the DL-SCH with a periodicity of 160 ms and variable transmission repetition periodicity within 160 ms as specified in TS 38.213 [13], clause 13. The default transmission repetition periodicity of *SIB1* is 20 ms but the actual transmission repetition periodicity is up to network implementation. For SSB and CORESET multiplexing pattern 1, *SIB1* repetition transmission period is 20 ms. For SSB and CORESET multiplexing pattern 2/3, *SIB1* transmission repetition period is the same as the SSB period (TS 38.213 [13], clause 13). *SIB1* includes information regarding the availability and scheduling (e.g. mapping of SIBs to SI message, periodicity, SI-window size) of other SIBs with an indication whether one or more SIBs are only provided on-demand and, in that case, the configuration needed by the UE to perform the SI request. *SIB1* is cell-specific SIB;

- SIBs other than *SIB1* are carried in *SystemInformation* (SI) messages, which are transmitted on the DL-SCH. Only SIBs having the same periodicity can be mapped to the same SI message. Each SI message is transmitted within periodically occurring time domain windows (referred to as SI-windows with same length for all SI messages). Each SI message is associated with an SI-window and the SI-windows of different SI messages do not overlap. That is, within one SI-window only the corresponding SI message is transmitted. An SI message may be transmitted a number of times within the SI-window. Any SIB except *SIB1* can be configured to be cell specific or area specific, using an indication in *SIB1*. The cell specific SIB is applicable only within a cell that provides the SIB while the area specific SIB is applicable within an area referred to as SI area, which consists of one or several cells and is identified by *systemInformationAreaID*;

https://www.etsi.org/deliver/etsi_ts/138300_138399/138331/15.13.00_60/ts_138331v151300p.pdf, at 25-26.

5.2.2.3            Acquisition of System Information

5.2.2.3.1            Acquisition of *MIB* and *SIB1*

The UE shall:

    1> apply the specified BCCH configuration defined in 9.1.1.1;

    1> if the UE is in RRC_IDLE or in RRC_INACTIVE; or

    1> if the UE is in RRC_CONNECTED while T311 is running:

        2> acquire the *MIB*, which is scheduled as specified in TS 38.213 [13];

        2> if the UE is unable to acquire the *MIB*;

            3> perform the actions as specified in clause 5.2.2.5;

        2> else:

            3> perform the actions specified in clause 5.2.2.4.1.

    1> if the UE is in RRC_CONNECTED with an active BWP with common search space configured by *searchSpaceSIB1* and *pagingSearchSpace* and has received an indication about change of system information; or

    1> if the UE is in RRC_IDLE or in RRC_INACTIVE; or

    1> if the UE is in RRC_CONNECTED while T311 is running:

        2> if *ssb-SubcarrierOffset* indicates *SIB1* is transmitted in the cell (TS 38.213 [13]) and if *SIB1* acquisition is required for the UE:

            3> acquire the *SIB1*, which is scheduled as specified in TS 38.213 [13];

            3> if the UE is unable to acquire the *SIB1*:

                4> perform the actions as specified in clause 5.2.2.5;

*Id.* at 28.

5.2.2.4.2            Actions upon reception of the *SIB1*

Upon receiving the *SIB1* the UE shall:

        4> if the UE has not stored a valid version of a SIB, in accordance with sub-clause 5.2.2.2.1, of one or several required SIB(s), in accordance with sub-clause 5.2.2.1:

            5> for the SI message(s) that, according to the *si-SchedulingInfo*, contain at least one required SIB and for which *si-BroadcastStatus* is set to broadcasting;

                6> acquire the SI message(s) as defined in sub-clause 5.2.2.3.2.

*Id.* at 31-32.

    –            SIB1

*SIB1* contains information relevant when evaluating if a UE is allowed to access a cell and defines the scheduling of other system information. It also contains radio resource configuration information that is common for all UEs and barring information applied to the unified access control.

    Signalling radio bearer: N/A

    RLC-SAP: TM

    Logical channels: BCCH

    Direction: Network to UE

**SIB1 message**

```
-- ASN1START
-- TAG-SIB1-START

SIB1 ::=           SEQUENCE {
    cellSelectionInfo              SEQUENCE {
        q-RxLevMin                     Q-RxLevMin,
        q-RxLevMinOffset               INTEGER (1..8)                                      OPTIONAL,  -- Need S
        q-RxLevMinSUL                  Q-RxLevMin                                          OPTIONAL,  -- Need R
        q-QualMin                      Q-QualMin                                           OPTIONAL,  -- Need S


        q-QualMinOffset                INTEGER (1..8)                                      OPTIONAL   -- Need S
    }                                                                                      OPTIONAL,  -- Cond Standalone
    cellAccessRelatedInfo          CellAccessRelatedInfo,
    connEstFailureControl          ConnEstFailureControl                                   OPTIONAL,  -- Need R
    si-SchedulingInfo              SI-SchedulingInfo                                       OPTIONAL,  -- Need R
    servingCellConfigCommon        ServingCellConfigCommonSIB                              OPTIONAL,  -- Need R
    ims-EmergencySupport           ENUMERATED {true}                                       OPTIONAL,  -- Need R
    eCallOverIMS-Support           ENUMERATED {true}                                       OPTIONAL,  -- Cond Absent
    ue-TimersAndConstants          UE-TimersAndConstants                                   OPTIONAL,  -- Need R

    uac-BarringInfo                SEQUENCE {
        uac-BarringForCommon           UAC-BarringPerCatList                               OPTIONAL,  -- Need S
        uac-BarringPerPLMN-List        UAC-BarringPerPLMN-List                             OPTIONAL,  -- Need S
        uac-BarringInfoSetList         UAC-BarringInfoSetList,
        uac-AccessCategory1-SelectionAssistanceInfo CHOICE {
            plmnCommon                     UAC-AccessCategory1-SelectionAssistanceInfo,
            individualPLMNList             SEQUENCE (SIZE (2..maxPLMN)) OF UAC-AccessCategory1-SelectionAssistanceInfo
        }                                                                                  OPTIONAL   -- Need S
    }                                                                                      OPTIONAL,  -- Need R
}
```

*Id.* at 167-169.

–       *SI-SchedulingInfo*

The IE *SI-SchedulingInfo* contains information needed for acquisition of SI messages.

**SI-SchedulingInfo information element**

```
-- ASN1START
-- TAG-SI-SCHEDULINGINFO-START

SI-SchedulingInfo ::=          SEQUENCE {
    schedulingInfoList             SEQUENCE (SIZE (1..maxSI-Message)) OF SchedulingInfo,
    si-WindowLength                ENUMERATED {s5, s10, s20, s40, s80, s160, s320, s640, s1280},
    si-RequestConfig               SI-RequestConfig                                       OPTIONAL,  -- Cond MSG-1
    si-RequestConfigSUL            SI-RequestConfig                                       OPTIONAL,  -- Cond SUL-MSG-1
    systemInformationAreaID        BIT STRING (SIZE (24))                                 OPTIONAL,  -- Need R
    ...
}

SchedulingInfo ::=             SEQUENCE {
    si-BroadcastStatus             ENUMERATED {broadcasting, notBroadcasting},
    si-Periodicity                 ENUMERATED {rf8, rf16, rf32, rf64, rf128, rf256, rf512},
    sib-MappingInfo                SIB-Mapping


}

SIB-Mapping ::=                SEQUENCE (SIZE (1..maxSIB)) OF SIB-TypeInfo

SIB-TypeInfo ::=               SEQUENCE {
    type                           ENUMERATED {sibType2, sibType3, sibType4, sibType5, sibType6, sibType7, sibType8, sibType9,
                                               spare8, spare7, spare6, spare5, spare4, spare3, spare2, spare1,... },
    valueTag                       INTEGER (0..31)                                        OPTIONAL,  -- Cond SIB-TYPE
    areaScope                      ENUMERATED {true}                                      OPTIONAL   -- Need S
}
```

*Id.* at 363-64.

83.     By further way of example, each Accused Product comprises receiver circuitry configured to receive a first type system information block (SIB) from the base station apparatus that is a current serving access node of the user equipment, the first type SIB comprising: a

parameter associated with a condition for determination of a failure of an SI message acquisition process.

5.2.2.2        SIB validity and need to (re)-acquire SIB

5.2.2.2.1        SIB validity

The UE shall apply the SI acquisition procedure as defined in clause 5.2.2.3 upon cell selection (e.g. upon power on), cell-reselection, return from out of coverage, after reconfiguration with sync completion, after entering the network from another RAT, upon receiving an indication that the system information has changed, upon receiving a PWS notification; and whenever the UE does not have a valid version of a stored SIB.

When the UE acquires a *MIB* or a *SIB1* or an SI message in a serving cell as described in clause 5.2.2.3, and if the UE stores the acquired SIB, then the UE shall store the associated *areaScope*, if present, the first *PLMN-Identity* in the *PLMN-IdentityInfoList*, the *cellIdentity*, the *systemInformationAreaID*, if present, and the *valueTag*, if present, as indicated in the *si-SchedulingInfo* for the SIB. The UE may use a valid stored version of the SI except *MIB*, *SIB1*, *SIB6*, *SIB7* or *SIB8* e.g. after cell re-selection, upon return from out of coverage or after the reception of SI change indication.

NOTE:        The storage and management of the stored SIBs in addition to the SIBs valid for the current serving cell is left to UE implementation.

The UE shall:

1> delete any stored version of a SIB after 3 hours from the moment it was successfully confirmed as valid;

1> for each stored version of a SIB:

   2> if the *areaScope* is associated and its value for the stored version of the SIB is the same as the value received in the *si-SchedulingInfo* for that SIB from the serving cell:

      3> if the first *PLMN-Identity* included in the *PLMN-IdentityInfoList*, the *systemInformationAreaID* and the *valueTag* that are included in the *si-SchedulingInfo* for the SIB received from the serving cell are identical to the *PLMN-Identity*, the *systemInformationAreaID* and the *valueTag* associated with the stored version of that SIB:

         4> consider the stored SIB as valid for the cell;

*Id.* at 27.

84.        By further way of example, each Accused Product comprises receiver circuitry configured to receive a first type system information block (SIB) from the base station apparatus that is a current serving access node of the user equipment, the first type SIB comprising: an indication of broadcast status for the SI message, the indication indicating broadcasting.

5.2.2.4.2        Actions upon reception of the *SIB1*

Upon receiving the *SIB1* the UE shall:

4> if the UE has not stored a valid version of a SIB, in accordance with sub-clause 5.2.2.2.1, of one or several required SIB(s), in accordance with sub-clause 5.2.2.1:

   5> for the SI message(s) that, according to the *si-SchedulingInfo*, contain at least one required SIB and for which *si-BroadcastStatus* is set to broadcasting:

      6> acquire the SI message(s) as defined in sub-clause 5.2.2.3.2;

*Id.* at 31-32.

–        *SI-SchedulingInfo*

The IE *SI-SchedulingInfo* contains information needed for acquisition of SI messages.

**SI-SchedulingInfo information element**

```
-- ASN1START
-- TAG-SI-SCHEDULINGINFO-START

SI-SchedulingInfo ::=                SEQUENCE {
    schedulingInfoList              SEQUENCE (SIZE (1..maxSI-Message)) OF SchedulingInfo,
    si-WindowLength                 ENUMERATED {ms5, s10, s20, s40, s80, s160, s320, s640, s1280},
    si-RequestConfig                SI-RequestConfig                         OPTIONAL,  -- Cond MSG-1
    si-RequestConfigSUL             SI-RequestConfig                         OPTIONAL,  -- Cond SUL-MSG-1
    systemInformationAreaID         BIT STRING (SIZE (24))                   OPTIONAL,  -- Need R
    ...
}

SchedulingInfo ::=                  SEQUENCE {
    si-BroadcastStatus              ENUMERATED {broadcasting, notBroadcasting},
    si-Periodicity                  ENUMERATED {rf8, rf16, rf32, rf64, rf128, rf256, rf512},
    sib-MappingInfo                 SIB-Mapping
}

SIB-Mapping ::=                     SEQUENCE (SIZE (1..maxSIB)) OF SIB-TypeInfo

SIB-TypeInfo ::=                    SEQUENCE {
    type                            ENUMERATED {sibType2, sibType3, sibType4, sibType5, sibType6, sibType7, sibType8, sibType9,
                                                spare8, spare7, spare6, spare5, spare4, spare3, spare2, spare1,... },
    valueTag                        INTEGER (0..31)                          OPTIONAL, -- Cond SIB-TYPE
    areaScope                       ENUMERATED {true}                        OPTIONAL -- Need S
}
```

*Id.* at 363-64.

85.    By further way of example, each Accused Product comprises processor circuitry configured to initiate, based on the indication, the SI message acquisition process in at least one of the SI windows to receive the SI message from the base station apparatus.

5.2.2.4.2        Actions upon reception of the *SIB1*

Upon receiving the *SIB1* the UE shall:

4> if the UE has not stored a valid version of a SIB, in accordance with sub-clause 5.2.2.2.1, of one or
several required SIB(s), in accordance with sub-clause 5.2.2.1:

5> for the SI message(s) that, according to the *si-SchedulingInfo*, contain at least one required SIB
and for which *si-BroadcastStatus* is set to broadcasting:

6> acquire the SI message(s) as defined in sub-clause 5.2.2.3.2;

*Id.* at 31-32.

-    SIBs other than *SIB1* are carried in *SystemInformation* (SI) messages, which are transmitted on the DL-SCH.
     Only SIBs having the same periodicity can be mapped to the same SI message. Each SI message is transmitted
     within periodically occurring time domain windows, referred to as SI-windows with same length for all SI
     messages). Each SI message is associated with an SI-window and the SI-windows of different SI messages do
     not overlap. That is, within one SI-window only the corresponding SI message is transmitted. An SI message
     may be transmitted a number of times within the SI-window. Any SIB except *SIB1* can be configured to be cell
     specific or area specific, using an indication in *SIB1*. The cell specific SIB is applicable only within a cell that
     provides the SIB while the area specific SIB is applicable within an area referred to as SI area, which consists of
     one or several cells and is identified by *systemInformationAreaID*;

*Id.* at 26.

86.     By further way of example, each Accused Product comprises processor circuitry configured to: initiate a re-acquisition process to re-acquire the first type SIB from the base station apparatus upon the failure of the SI message acquisition process.

5.2.2.2     SIB validity and need to (re)-acquire SIB

5.2.2.2.1     SIB validity

The UE shall apply the SI acquisition procedure as defined in clause 5.2.2.3 upon cell selection (e.g. upon power on), cell-reselection, return from out of coverage, after reconfiguration with sync completion, after entering the network from another RAT, upon receiving an indication that the system information has changed, upon receiving a PWS notification; and whenever the UE does not have a valid version of a stored SIB.

When the UE acquires a *MIB* or a *SIB1* or an SI message in a serving cell as described in clause 5.2.2.3, and if the UE stores the acquired SIB, then the UE shall store the associated *areaScope*, if present, the first *PLMN-Identity* in the *PLMN-IdentityInfoList*, the *cellIdentity*, the *systemInformationAreaID*, if present, and the *valueTag*, if present, as indicated in the *si-SchedulingInfo* for the SIB. The UE may use a valid stored version of the SI except *MIB*, *SIB1*, *SIB6*, *SIB7* or *SIB8* e.g. after cell re-selection, upon return from out of coverage or after the reception of SI change indication.

NOTE:     The storage and management of the stored SIBs in addition to the SIBs valid for the current serving cell is left to UE implementation.

*Id.* at 27.

87.     TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '557 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as TCL's partners, customers, clients, and end-users, in this District and elsewhere in the United States. For example, TCL's partners, customers, clients, and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '557 Patent. TCL induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to partners, customers, clients, and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation related to the Accused Products. Because of TCL's inducement, TCL's partners, customers, clients, and end-users use the Accused Products in a way TCL intends and they directly infringe the '557 Patent.

TCL performs these affirmative acts with knowledge of the '557 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '557 Patent.

88.     TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '557 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as partners, customers, clients, and end-users, in this District and elsewhere in the United States. TCL's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products such that the '557 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '557 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TCL to be especially made or adapted for use in the infringement of the '557 Patent. TCL performs these affirmative acts with knowledge of the '557 Patent and with intent, or willful blindness, that they cause the direct infringement of the '557 Patent.

89.     Defendants' infringement of the '557 Patent is and has been willful. Defendants have had actual notice of the Patents-in-Suit at least from AWT's letter dated April 11, 2025, sent by email and hard copy, apprising Defendants of TCL's infringement of the Patents-in-Suit. TCL never responded.

90.     AWT has suffered damages as a result of Defendants' direct and indirect infringement of the '557 Patent in an amount to be proved at trial.

## COUNT V
### (Infringement of the '764 Patent)

91.     Paragraphs 1 through 41 are incorporated by reference as if fully set forth herein.

92.    AWT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '764 Patent.

93.    Defendants have and continue to directly infringe the '764 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '764 Patent. Such products include at least the Accused Products.

94.    For example, Defendants have and continue to directly infringe at least claim 1 of the '764 Patent by making, using, offering to sell, selling, and/or importing into the United States products and services including at least the Accused Products that implement 3GPP standards (*e.g.*, 3GPP TS 36.331, TS 36.213, and TS 36.212), which include a User Equipment (UE) comprising: receiving circuitry configured to receive, in more than one second subframe, a second downlink control information (DCI) format carried on a second narrowband physical downlink control channel (NPDCCH), after receiving Single-Cell Multicast Control Channel (SC-MCCH) information; and processing circuitry configured to acquire, on the basis of a first DCI format carried on a first NPDCCH and received in more than one first subframe, another SC-MCCH information, in a case that the second DCI format indicates an SC-MCCH information change notification, wherein a period of the more than one first subframe is different from a period of the more than one second subframe, and the first DCI format indicates a resource for a transmission of the another SC-MCCH information.

95.    By way of example, each Accused Product comprises a User Equipment (UE) compliant with the 3GPP standards with receiving circuitry configured to receive, in more than one second subframe, a second downlink control information (DCI) format carried on a second

narrowband physical downlink control channel (NPDCCH), after receiving Single-Cell Multicast

Control Channel (SC-MCCH) information.

## 5.8a.1.2    SC-MCCH scheduling

The SC-MCCH information (i.e. information transmitted in messages sent over SC-MCCH) is transmitted periodically, using a configurable repetition period. SC-MCCH transmissions (and the associated radio resources and MCS) are indicated on PDCCH.

## 5.8a.1.3    SC-MCCH information validity and notification of changes

Change of SC-MCCH information only occurs at specific radio frames, i.e. the concept of a modification period is used. Within a modification period, the same SC-MCCH information may be transmitted a number of times, as defined by its scheduling (which is based on a repetition period). The modification period boundaries are defined by SFN values for which SFN mod $m$= 0, where $m$ is the number of radio frames comprising the modification period. The modification period is configured by means of *SystemInformationBlockType20* (*SystemInformationBlockType20-NB* in NB-IoT). If H-SFN is provided in *SystemInformationBlockType1-BR*, modification period boundaries for BL UEs or UEs in CE are defined by SFN values for which (H-SFN * 1024 + SFN) mod $m$=0. The modification period boundaries for NB-IoT UEs are defined by SFN values for which (H-SFN * 1024 + SFN) mod $m$=0.

When the network changes (some of) the SC-MCCH information, it notifies the UEs, other than BL UEs, UEs in CE or NB-IoT UEs, about the change in the first subframe which can be used for SC-MCCH transmission in a repetition period. LSB bit in 8-bit bitmap when set to '1' indicates the change in SC-MCCH. Upon receiving a change notification, a UE interested to receive MBMS services transmitted using SC-PTM acquires the new SC-MCCH information starting from the same subframe. The UE applies the previously acquired SC-MCCH information until the UE acquires the new SC-MCCH information.

When the network changes (some of) the SC-MCCH information for start of new MBMS service(s) transmitted using SC-PTM, it notifies BL UEs, UEs in CE or NB-IoT UEs about the change in every PDCCH which schedules the first SC-MCCH in a repetition period in the current modification period. The notification is transmitted with 1 bit. The bit, when set to '1', indicates the start of new MBMS service(s), see TS 36.212 [22, 5.3.3.1.14 & 6.4.3.3]. Upon receiving a change notification, a BL UE, UE in CE or NB-IoT UE interested to receive MBMS services transmitted using SC-PTM acquires the new SC-MCCH information scheduled by the PDCCH. The BL UE, UE in CE or NB-IoT UE applies the previously acquired SC-MCCH information until the BL UE, UE in CE or NB-IoT UE acquires the new SC-MCCH information.

https://www.etsi.org/deliver/etsi_ts/136300_136399/136331/14.16.00_60/ts_136331v141600p.pdf, at 209-210.

### 6.4.3.2    DCI Format N1

DCI format N1 is used for the scheduling of one NPDSCH codeword in one cell, random access procedure initiated by a NPDCCH order, and notifying SC-MCCH change. The DCI corresponding to a NPDCCH order is carried by NPDCCH.

The following information is transmitted by means of the DCI format N1:

- If the format N1 CRC is scrambled by C-RNTI or RA-RNTI:

    - Flag for format N0/format N1 differentiation – 1 bit, where value 0 indicates format N0 and value 1 indicates format N1

    - NPDCCH order indicator – 1 bit

- Else if the format N1 CRC is scrambled by a G-RNTI:

    - Information for SC-MCCH change notification – 2 bits as defined in clause 5.8a of [6]

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/14.16.00_60/ts_136212v141600p.pdf, at 199.

## 16.4.1    UE procedure for receiving the narrowband physical downlink shared channel

A UE shall upon detection on a given serving cell of a NPDCCH with DCI format N1, N2 ending in subframe $n$ intended for the UE, decode, starting in $n+5$ DL subframe, the corresponding NPDSCH transmission in $N$ consecutive NB-IoT DL subframe(s) $n_i$ with $i = 0, 1, ..., N-1$ according to the NPDCCH information, where

- subframe $n$ is the last subframe in which the NPDCCH is transmitted and is determined from the starting subframe of NPDCCH transmission and the DCI subframe repetition number field in the corresponding DCI;

- subframe(s) $n_i$ with $i=0,1,...,N-1$ are $N$ consecutive NB-IoT DL subframe(s) excluding subframes used for SI messages where, $n_0<n_1<...,n_{N-1}$,,

- $N=N_{Rep}N_{SF}$, where the value of $N_{Rep}$ is determined by the repetition number field in the corresponding DCI (see Subclause 16.4.1.3), and the value of $N_{SF}$ is determined by the resource assignment field in the corresponding DCI (see Subclause 16.4.1.3), and

- $k_0$ is the number of NB-IoT DL subframe(s) starting in DL subframe $n+5$ until DL subframe $n_0$, where $k_0$ is determined by the scheduling delay field ($I_{Delay}$) for DCI format N1, and $k_0 = 0$ for DCI format N2. For DCI CRC scrambled by G-RNTI, $k_0$ is determined by the scheduling delay field ($I_{Delay}$) according to Table 16.4.1-1a, otherwise $k_0$ is determined by the scheduling delay field ($I_{Delay}$) according to Table 16.4.1-1. The value of $R_{max}$ is according to Subclause 16.6 for the corresponding DCI format N1.

https://www.etsi.org/deliver/etsi_ts/136200_136299/136213/14.17.00_60/ts_136213v141700p.pdf, at 441.

96.    By further way of example, each Accused Product comprises processing circuitry configured to acquire, on the basis of a first DCI format carried on a first NPDCCH and received

in more than one first subframe, another SC-MCCH information, in a case that the second DCI format indicates an SC-MCCH information change notification.

### 6.4.3.3    DCI Format N2

DCI format N2 is used for paging, direct indication, scheduling of one NPDSCH codeword carrying SC-MCCH in one cell, and notifying SC-MCCH change.

The following information is transmitted by means of the DCI format N2:

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/14.16.00_60/ts_136212v141600p.pdf, at 199.

### 5.8a.1.2    SC-MCCH scheduling

The SC-MCCH information (i.e. information transmitted in messages sent over SC-MCCH) is transmitted periodically, using a configurable repetition period. SC-MCCH transmissions (and the associated radio resources and MCS) are indicated on PDCCH.

### 5.8a.1.3    SC-MCCH information validity and notification of changes

Change of SC-MCCH information only occurs at specific radio frames, i.e. the concept of a modification period is used. Within a modification period, the same SC-MCCH information may be transmitted a number of times, as defined by its scheduling (which is based on a repetition period). The modification period boundaries are defined by SFN values for which SFN mod $m$= 0, where $m$ is the number of radio frames comprising the modification period. The modification period is configured by means of *SystemInformationBlockType20* (*SystemInformationBlockType20-NB* in NB-IoT). If H-SFN is provided in *SystemInformationBlockType1-BR*, modification period boundaries for BL UEs or UEs in CE are defined by SFN values for which (H-SFN * 1024 + SFN) mod $m$=0. The modification period boundaries for NB-IoT UEs are defined by SFN values for which (H-SFN * 1024 + SFN) mod $m$=0.

When the network changes (some of) the SC-MCCH information, it notifies the UEs, other than BL UEs, UEs in CE or NB-IoT UEs, about the change in the first subframe which can be used for SC-MCCH transmission in a repetition period. LSB bit in 8-bit bitmap when set to '1' indicates the change in SC-MCCH. Upon receiving a change notification, a UE interested to receive MBMS services transmitted using SC-PTM acquires the new SC-MCCH information starting from the same subframe. The UE applies the previously acquired SC-MCCH information until the UE acquires the new SC-MCCH information.

When the network changes (some of) the SC-MCCH information for start of new MBMS service(s) transmitted using SC-PTM, it notifies BL UEs, UEs in CE or NB-IoT UEs about the change in every PDCCH which schedules the first SC-MCCH in a repetition period in the current modification period. The notification is transmitted with 1 bit. The bit, when set to '1', indicates the start of new MBMS service(s) see TS 36.212 [22, 5.3.3.1.14 & 6.4.3.3]. Upon receiving a change notification, a BL UE, UE in CE or NB-IoT UE interested to receive MBMS services transmitted using SC-PTM acquires the new SC-MCCH information scheduled by the PDCCH. The BL UE, UE in CE or NB-IoT UE applies the previously acquired SC-MCCH information until the BL UE, UE in CE or NB-IoT UE acquires the new SC-MCCH information.

https://www.etsi.org/deliver/etsi_ts/136300_136399/136331/14.16.00_60/ts_136331v141600p.pdf, at 209.

## 16.4.1    UE procedure for receiving the narrowband physical downlink shared channel

A UE shall upon detection on a given serving cell of a NPDCCH with DCI format N1, N2 ending in subframe $n$ intended for the UE, decode, starting in $n+5$ DL subframe, the corresponding NPDSCH transmission in $N$ consecutive NB-IoT DL subframe(s) $n_i$ with $i = 0, 1, ..., N-1$ according to the NPDCCH information, where

- subframe $n$ is the last subframe in which the NPDCCH is transmitted and is determined from the starting subframe of NPDCCH transmission and the DCI subframe repetition number field in the corresponding DCI;

- subframe(s) $n_i$ with $i=0,1,...,N-1$ are $N$ consecutive NB-IoT DL subframe(s) excluding subframes used for SI messages where, $n_0 < n_1 < ..., n_{N-1}$ ,,

- $N = N_{Rep} N_{SF}$, where the value of $N_{Rep}$ is determined by the repetition number field in the corresponding DCI (see Subclause 16.4.1.3), and the value of $N_{SF}$ is determined by the resource assignment field in the corresponding DCI (see Subclause 16.4.1.3), and

- $k_0$ is the number of NB-IoT DL subframe(s) starting in DL subframe $n+5$ until DL subframe $n_0$, where $k_0$ is determined by the scheduling delay field ($I_{Delay}$) for DCI format N1, and $k_0 = 0$ for DCI format N2. For DCI CRC scrambled by G-RNTI, $k_0$ is determined by the scheduling delay field ($I_{Delay}$) according to Table 16.4.1-1a, otherwise $k_0$ is determined by the scheduling delay field ($I_{Delay}$) according to Table 16.4.1-1. The value of $R_{max}$ is according to Subclause 16.6 for the corresponding DCI format N1.

https://www.etsi.org/deliver/etsi_ts/136200_136299/136213/14.17.00_60/ts_136213v141700p.pdf, at 441.

97.    By further way of example, in the Accused Products, a period of the more than one first subframe is different from a period of the more than one second subframe.

## 5.8a.1.3    SC-MCCH information validity and notification of changes

When the network changes SC-MTCH specific information e.g. start of new MBMS service(s) transmitted using SC-PTM or change of ongoing MBMS service(s) transmitted using SC-PTM, it notifies the BL UEs, UEs in CE or NB-IoT UEs in the PDCCH which schedules the SC-MTCH in the current modification period. The notification is transmitted with a 2 bit bitmap. The LSB in the 2-bit bitmap, when set to '1', indicates the change of the on-going MBMS service and the MSB in the 2-bit bitmap, when set to '1', indicates the start of new MBMS service(s), see TS 36.212 [22, 5.3.3.1.12 & 5.3.3.1.13 & 6.4.3.2]. In the case the network changes an on-going SC-MTCH transmission in the next modification period, it notifies the BL UEs, UEs in CE or NB-IoT UEs in the PDCCH which schedules this SC-MTCH in the current modification period. In the case the network starts new MBMS service(s) transmitted using SC-PTM, the network notifies the UEs which have on-going SC-MTCH in the PDCCH scheduling each of the SC-MTCH. Upon receiving such notification, a BL UE, UE in CE or NB-IoT UE acquires the new SC-MCCH information at the start of the next modification period. The BL UE, UE in CE or NB-IoT UE applies the previously acquired SC-MCCH information until the BL UE, UE in CE or NB-IoT UE acquires the new SC-MCCH information.

https://www.etsi.org/deliver/etsi_ts/136300_136399/136331/14.16.00_60/ts_136331v141600p.pdf, at 209-210.

### 5.8.1.3    MCCH information validity and notification of changes

Change of MCCH information only occurs at specific radio frames, i.e. the concept of a modification period is used. Within a modification period, the same MCCH information may be transmitted a number of times, as defined by its scheduling (which is based on a repetition period). The modification period boundaries are defined by SFN values for which SFN mod *m*= 0, where *m* is the number of radio frames comprising the modification period. The modification period is configured by means of *SystemInformationBlockType13*.

When the network changes (some of) the MCCH information, it notifies the UEs about the change during a first modification period. In the next modification period, the network transmits the updated MCCH information. These general principles are illustrated in figure 5.8.1.3-1, in which different colours indicate different MCCH information. Upon receiving a change notification, a UE interested to receive MBMS services acquires the new MCCH information immediately from the start of the next modification period. The UE applies the previously acquired MCCH information until the UE acquires the new MCCH information.



**Figure 5.8.1.3-1: Change of MCCH Information**

*Id.* at 202-203.

98.    By further way of example, in the Accused Products, the first DCI format indicates a resource for a transmission of the another SC-MCCH information.

### 6.4.3.3    DCI Format N2

DCI format N2 is used for paging, direct indication, scheduling of one NPDSCH codeword carrying SC-MCCH in one cell, and notifying SC-MCCH change.

The following information is transmitted by means of the DCI format N2:

- If the format N2 CRC is scrambled by P-RNTI:

  - Flag for paging/direct indication differentiation – 1 bit, with value 0 for direct indication and value 1 for paging

- Else if the format N2 CRC is scrambled by a SC-RNTI:

  - Information for SC-MCCH change notification – 1 bit as defined in clause 5.8a of [6]

- If the format N2 CRC is scrambled by P-RNTI and Flag=0:

  - Direct Indication information – 8 bits provide direct indication of system information update and other fields, as defined in [6]

  - Reserved information bits are added until the size is equal to that of format N2 with Flag=1

- If the format N2 CRC is scrambled by P-RNTI and Flag=1, or if the format N2 CRC is scrambled by SC-RNTI:

  - Resource assignment – 3 bits as defined in clause 16.4.1.3 of [3]

  - Modulation and coding scheme – 4 bits as defined in clause 16.4.1.5 of [3]

  - Repetition number – 4 bits as defined in clause 16.4.1.3 of [3]

  - DCI subframe repetition number – 3 bits as defined in clause 16.6 of [3]

https://www.etsi.org/deliver/etsi_ts/136200_136299/136212/14.16.00_60/ts_136212v141600p.pdf, at 199-200.

### 6.4.3.2    DCI Format N1

DCI format N1 is used for the scheduling of one NPDSCH codeword in one cell, random access procedure initiated by a NPDCCH order, and notifying SC-MCCH change. The DCI corresponding to a NPDCCH order is carried by NPDCCH.

The following information is transmitted by means of the DCI format N1:

- If the format N1 CRC is scrambled by C-RNTI or RA-RNTI:

  - Flag for format N0/format N1 differentiation – 1 bit, where value 0 indicates format N0 and value 1 indicates format N1

  - NPDCCH order indicator – 1 bit

- Else if the format N1 CRC is scrambled by a G-RNTI:

  - Information for SC-MCCH change notification – 2 bits as defined in clause 5.8a of [6]

*Id.*, at 199.

99.    TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '764 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as TCL's partners, customers, clients, and end-users, in this District and elsewhere in the United States. For example, TCL's partners, customers, clients, and end-users directly infringe, either

literally or under the doctrine of equivalents, through their use of the inventions claimed in the '764 Patent. TCL induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to partners, customers, clients, and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation related to the Accused Products. Because of TCL's inducement, TCL's partners, customers, clients, and end-users use the Accused Products in a way TCL intends and they directly infringe the '764 Patent. TCL performs these affirmative acts with knowledge of the '764 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '764 Patent.

100.    TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '764 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as partners, customers, clients, and end-users, in this District and elsewhere in the United States. TCL's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products such that the '764 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '764 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TCL to be especially made or adapted for use in the infringement of the '764 Patent. TCL performs these affirmative acts with knowledge of the '764 Patent and with intent, or willful blindness, that they cause the direct infringement of the '764 Patent.

101.    Defendants' infringement of the '764 Patent is and has been willful. Defendants have had actual notice of the Patents-in-Suit at least from AWT's letter dated April 11, 2025, sent by email and hard copy, apprising Defendants of TCL's infringement of the Patents-in-Suit. TCL never responded.

102.    AWT has suffered damages as a result of Defendants' direct and indirect infringement of the '764 Patent in an amount to be proved at trial.

### COUNT VI
### (Infringement of the '566 Patent)

103.    Paragraphs 1 through 41 are incorporated by reference as if fully set forth herein.

104.    AWT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '566 Patent.

105.    Defendants have and continue to directly infringe the '566 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '566 Patent. Such products include at least the Accused Products.

106.    For example, Defendants have and continue to directly infringe at least claim 1 of the '566 Patent by making, using, offering to sell, selling, and/or importing into the United States products and services including at least the Accused Products that implement 3GPP standards (*e.g.*, 3GPP TS 38.213 and TS 38.331), which include a user equipment (UE), comprising: a processor; and memory in electronic communication with the processor, wherein instructions stored in the memory are executable to: determine an uplink control channel (PUCCH) spans over multiple slots based on a signaling from a base station (gNB); determine a method of a frequency hopping for the configured multiple slots PUCCH; and transmit uplink control information (UCI) with the

frequency hopping, wherein the number of symbols of the PUCCH is the same in each slot of the multi slots, and the location of the symbols for the PUCCH is the same in the each slot of the multiple slots.

107.    By way of example, each Accused Product is compliant with the 3GPP standards, has a processor, and memory communicating with the processor, and determines an uplink control channel (PUCCH) spans over multiple slots based on a signaling from a base station (gNB).

## 9.2.6    PUCCH repetition procedure

For PUCCH formats 1, 3, or 4, a UE can be configured a number of slots, $N_{PUCCH}^{repeat}$, for repetitions of a PUCCH transmission by respective *nrofSlots*.

For $N_{PUCCH}^{repeat} > 1$,

- the UE repeats the PUCCH transmission with the UCI over $N_{PUCCH}^{repeat}$ slots

- a PUCCH transmission in each of the $N_{PUCCH}^{repeat}$ slots has a same number of consecutive symbols, as provided by *nrofSymbols* in *PUCCH-format1*, *nrofSymbols* in *PUCCH-format3*, or *nrofSymbols* in *PUCCH-format4*

- a PUCCH transmission in each of the $N_{PUCCH}^{repeat}$ slots has a same first symbol, as provided by *startingSymbolIndex* in *PUCCH-format1*, *startingSymbolIndex* in *PUCCH-format3*, or *startingSymbolIndex* in *PUCCH-format4*

- the UE is configured by *interslotFrequencyHopping* whether or not to perform frequency hopping for PUCCH transmissions in different slots

  - if the UE is configured to perform frequency hopping for PUCCH transmissions across different slots

    - the UE performs frequency hopping per slot

    - the UE transmits the PUCCH starting from a first PRB, provided by *startingPRB*, in slots with even number and starting from the second PRB, provided by *secondHopPRB*, in slots with odd number. The slot indicated to the UE for the first PUCCH transmission has number 0 and each subsequent slot until the UE transmits the PUCCH in $N_{PUCCH}^{repeat}$ slots is counted regardless of whether or not the UE transmits the PUCCH in the slot

    - the UE does not expect to be configured to perform frequency hopping for a PUCCH transmission within a slot

  - If the UE is not configured to perform frequency hopping for PUCCH transmissions across different slots and if the UE is configured to perform frequency hopping for PUCCH transmissions within a slot, the frequency hopping pattern between the first PRB and the second PRB is same within each slot

https://www.etsi.org/deliver/etsi_ts/138200_138299/138213/15.14.00_60/ts_138213v151400p.pdf, at 69.

```
PUCCH-FormatConfig ::=              SEQUENCE {
    interslotFrequencyHopping           ENUMERATED {enabled}                         OPTIONAL, -- Need R
    additionalDMRS                      ENUMERATED {true}                            OPTIONAL, -- Need R
    maxCodeRate                         PUCCH-MaxCodeRate                            OPTIONAL, -- Need R
    nrofSlots                           ENUMERATED {n2,n4,n8}                        OPTIONAL, -- Need S
    p12BPSK                             ENUMERATED {enabled}                         OPTIONAL, -- Need R
    simultaneousHARQ-ACK-CSI            ENUMERATED {true}                            OPTIONAL  -- Need R
}
```

https://www.etsi.org/deliver/etsi_ts/138300_138399/138331/15.13.00_60/ts_138331v151300p.pdf, at 298.

108.   By further way of example, each Accused Product determines a method of a frequency hopping for the configured multiple slots PUCCH and transmits uplink control information (UCI) with the frequency hopping.

## 9.2.6   PUCCH repetition procedure

For PUCCH formats 1, 3, or 4, a UE can be configured a number of slots, $N_{PUCCH}^{repeat}$, for repetitions of a PUCCH transmission by respective *nrofSlots*.

For $N_{PUCCH}^{repeat} > 1$,

- the UE repeats the PUCCH transmission with the UCI over $N_{PUCCH}^{repeat}$ slots

- a PUCCH transmission in each of the $N_{PUCCH}^{repeat}$ slots has a same number of consecutive symbols, as provided by *nrofSymbols* in *PUCCH-format1*, *nrofSymbols* in *PUCCH-format3*, or *nrofSymbols* in *PUCCH-format4*

- a PUCCH transmission in each of the $N_{PUCCH}^{repeat}$ slots has a same first symbol, as provided by *startingSymbolIndex* in *PUCCH-format1*, *startingSymbolIndex* in *PUCCH-format3*, or *startingSymbolIndex* in *PUCCH-format4*

- the UE is configured by *interslotFrequencyHopping* whether or not to perform frequency hopping for PUCCH transmissions in different slots

   - if the UE is configured to perform frequency hopping for PUCCH transmissions across different slots

     - the UE performs frequency hopping per slot

     - the UE transmits the PUCCH starting from a first PRB, provided by *startingPRB*, in slots with even number and starting from the second PRB, provided by *secondHopPRB*, in slots with odd number. The slot indicated to the UE for the first PUCCH transmission has number 0 and each subsequent slot until the UE transmits the PUCCH in $N_{PUCCH}^{repeat}$ slots is counted regardless of whether or not the UE transmits the PUCCH in the slot

     - the UE does not expect to be configured to perform frequency hopping for a PUCCH transmission within a slot

   - If the UE is not configured to perform frequency hopping for PUCCH transmissions across different slots and if the UE is configured to perform frequency hopping for PUCCH transmissions within a slot, the frequency hopping pattern between the first PRB and the second PRB is same within each slot

https://www.etsi.org/deliver/etsi_ts/138200_138299/138213/15.14.00_60/ts_138213v151400p.pdf, at 69.

62

109.    By further way of example, in the Accused Products, the number of symbols of the PUCCH is the same in each slot of the multiple slots and the location of the symbols for the PUCCH is the same in the each slot of the multiple slots.

### 9.2.6    PUCCH repetition procedure

For PUCCH formats 1, 3, or 4, a UE can be configured a number of slots, $N_{\text{PUCCH}}^{\text{repeat}}$, for repetitions of a PUCCH transmission by respective *nrofSlots*.

For $N_{\text{PUCCH}}^{\text{repeat}} > 1$,

- the UE repeats the PUCCH transmission with the UCI over $N_{\text{PUCCH}}^{\text{repeat}}$ slots

- a PUCCH transmission in each of the $N_{\text{PUCCH}}^{\text{repeat}}$ slots has a same number of consecutive symbols, as provided by *nrofSymbols* in *PUCCH-format1*, *nrofSymbols* in *PUCCH-format3*, or *nrofSymbols* in *PUCCH-format4*

- a PUCCH transmission in each of the $N_{\text{PUCCH}}^{\text{repeat}}$ slots has a same first symbol, as provided by *startingSymbolIndex* in *PUCCH-format1*, *startingSymbolIndex* in *PUCCH-format3*, or *startingSymbolIndex* in *PUCCH-format4*

- the UE is configured by *interslotFrequencyHopping* whether or not to perform frequency hopping for PUCCH transmissions in different slots

  - if the UE is configured to perform frequency hopping for PUCCH transmissions across different slots

    - the UE performs frequency hopping per slot

    - the UE transmits the PUCCH starting from a first PRB, provided by *startingPRB*, in slots with even number and starting from the second PRB, provided by *secondHopPRB*, in slots with odd number. The slot indicated to the UE for the first PUCCH transmission has number 0 and each subsequent slot until the UE transmits the PUCCH in $N_{\text{PUCCH}}^{\text{repeat}}$ slots is counted regardless of whether or not the UE transmits the PUCCH in the slot

    - the UE does not expect to be configured to perform frequency hopping for a PUCCH transmission within a slot

  - If the UE is not configured to perform frequency hopping for PUCCH transmissions across different slots and if the UE is configured to perform frequency hopping for PUCCH transmissions within a slot, the frequency hopping pattern between the first PRB and the second PRB is same within each slot

https://www.etsi.org/deliver/etsi_ts/138200_138299/138213/15.14.00_60/ts_138213v151400p.pdf, at 69.

110.    TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '566 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as TCL's partners, customers, clients, and end-users, in this District and elsewhere in the United States. For example, TCL's partners, customers, clients, and end-users directly infringe, either

literally or under the doctrine of equivalents, through their use of the inventions claimed in the '566 Patent. TCL induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to partners, customers, clients, and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation related to the Accused Products. Because of TCL's inducement, TCL's partners, customers, clients, and end-users use the Accused Products in a way TCL intends and they directly infringe the '566 Patent. TCL performs these affirmative acts with knowledge of the '566 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '566 Patent.

111.    TCL has indirectly infringed and continues to indirectly infringe one or more claims of the '566 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as partners, customers, clients, and end-users, in this District and elsewhere in the United States. TCL's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products such that the '566 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '566 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TCL to be especially made or adapted for use in the infringement of the '566 Patent. TCL performs these affirmative acts with knowledge of the '566 Patent and with intent, or willful blindness, that they cause the direct infringement of the '566 Patent.

112.    Defendants' infringement of the '566 Patent is and has been willful. Defendants have had actual notice of the Patents-in-Suit at least from AWT's letter dated April 11, 2025, sent by email and hard copy, apprising Defendants of TCL's infringement of the Patents-in-Suit. TCL never responded.

113.    AWT has suffered damages as a result of Defendants' direct and indirect infringement of the '566 Patent in an amount to be proved at trial.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, AWT prays for relief against Defendants as follows:

a.    Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the Patents-in-Suit;

c.    An order awarding damages sufficient to compensate AWT for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.    Entry of judgment declaring that Defendants' infringement has been willful and awarding ACT treble damages pursuant to 35 U.S.C. § 284;

e.    Entry of judgment declaring that this case is exceptional and awarding AWT its costs and reasonable attorney fees under 35 U.S.C. § 285; and

f.    Such other and further relief as the Court deems just and proper.

Dated:  November 26, 2025          Respectfully submitted,

                           */s/ Vincent J. Rubino, III*

Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF***
***ACTIVE WIRELESS TECHNOLOGIES LLC***